**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Deirdre Aaron
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

Jennifer L. Liu
One Embarcadero Center, 38th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile: (646) 509-2092

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
1515 South Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888
Facsimile: (561) 447-8831

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DANA ABOUD, WILLIAM HICKS, MICHAEL POROWSKI, and ALBERT SCHWEIZER, individually and on behalf all others similarly situated,

          Plaintiffs,

    v.

CHARLES SCHWAB & CO., INC.,

          Defendant.

**No. 14 Civ. 2712 (PAC)**

**REVISED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND APPROVAL OF PLAINTIFFS' PROPOSED NOTICES OF SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

I.  FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 1

    A.  Factual Allegations ................................................................................................ 1

    B.  Overview of Investigation ..................................................................................... 2

    C.  Settlement Negotiations ........................................................................................ 3

    D.  Litigation ............................................................................................................... 3

II.  SUMMARY OF THE SETTLEMENT TERMS ............................................................. 4

    A.  The Settlement Fund ............................................................................................. 4

    B.  Eligible Employees ............................................................................................... 4

    C.  Releases ................................................................................................................. 4

    D.  Allocation Formula ............................................................................................... 5

    E.  Attorneys' Fees, Litigation Costs, and Service Awards ....................................... 5

    F.  Settlement Claims Administrator .......................................................................... 6

III.  CLASS ACTION SETTLEMENT PROCEDURE ......................................................... 6

IV.  PRELIMINARY APPROVAL  OF THE SETTLEMENT IS APPROPRIATE ................ 8

    A.  The Settlement Is Fair, Reasonable, and Adequate .............................................. 9

        1.  Litigation Through Trial Would Be Complex, Costly, and Long
            (*Grinnell* Factor 1) .................................................................................. 10

        2.  The Reaction of the Class Has Been Positive (*Grinnell* Factor 2. ........... 11

        3.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve
            the Case Responsibly (*Grinnell* Factor 3) ................................................ 11

        4.  Plaintiffs Would Face Real Risks If the Case Proceeded (*Grinnell* Factors
            4 and 5) ...................................................................................................... 12

5.  Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6) ........................................................................................ 13

6.  Defendant's Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7) ............................................................ 14

7.  The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ........................................................................ 14

V.  PROVISIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE .... 15

A.  Numerosity ........................................................................................................ 17

B.  Commonality ..................................................................................................... 17

C.  Typicality .......................................................................................................... 18

D.  Adequacy of the Named Plaintiffs ................................................................... 19

E.  Certification Is Proper Under Rule 23(b)(3) ..................................................... 20

1.  Common Questions Predominate ........................................................... 20

2.  A Class Action Is a Superior Mechanism ............................................... 21

VI.  PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL .......... 22

VII.  THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE .................................................................................................... 23

VIII.  PLAINTIFFS WILL SEEK APPROVAL OF THE FLSA SETTLEMENT .................... 24

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aber-Shukofsky v. JPMorgan Chase & Co.*,
755 F. Supp. 2d 441 (S.D.N.Y. 2010)..................................................14

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997).........................................................................20, 21

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)......................................10, 11, 13

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467, 475 (S.D.N.Y. 2013) ...........................................11, 12

*Capsolas v. Pasta Res. Inc.*,
No. 10 Civ. 5595, 2012 WL 1656920 (S.D.N.Y. May 9, 2012)...........20

*In re Castagna v. Madison Square Garden, L.P.*,
No. 09 Civ. 10211, 2011 WL 2208614 (S.D.N.Y. Jun. 7, 2011).........12

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)...................................................9, 10, 15

*Clark v. Ecolab Inc.*,
Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729
(S.D.N.Y. Nov. 27, 2009) ...............................................................8, 21

*Clark v. Ecolab Inc.*,
Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198
(S.D.N.Y. May 11, 2010)......................................................................18

*Cnty. of Suffolk v. Long Island Lighting Co.*,
710 F. Supp. 1422 (E.D.N.Y. 1989) ..................................................16

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995)..................................................................17

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007)...................................................................20

*Damassia v. Duane Reade, Inc.*,
250 F.R.D. (S.D.N.Y. 2008) ...............................................................22

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)...................................................................10

iv

*Diaz v. E. Locating Serv. Inc.*,
  No. 10 Civ. 4082, 2010 WL 5507912.................................................................11

*Dorn v. Eddington Sec., Inc.*,
  No. 08 Civ. 10271, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011)..........................16

*Dziennik v. Sealift, Inc.*,
  No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007)..........................19

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  Nos. 05 Civ. 10240, 05 Civ. 10287, 05 Civ. 10515, 05 Civ. 10610,
  06 Civ. 304, 06 Civ. 347, 06 Civ. 1684, 2007 WL 2230177
  (S.D.N.Y. July 27, 2007) .....................................................................................9

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005).................................................................*passim*

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)...................................................................................16

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982).............................................................................................17

*Goldberg v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000).....................................................................................9

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968).................................................................................21

*Hein v. PNC Fin. Servs. Grp.*,
  511 F. Supp. 2d 563 (E.D. Pa. 2007) ............................................................10, 13

*Hernandez v. Merrill Lynch & Co., Inc.*,
  No. 11 Civ. 8472, 2012 WL 5862749 (S.D.N.Y. Mar. 21, 2013) ........................19

*In re Interpublic Sec. Litig.*,
  No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ........................12

*In re Ira Haupt & Co.*,
  304 F. Supp. 917 (S.D.N.Y. 1969)......................................................................12

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
  109 F.R.D. 391 (S.D.N.Y. 1986) .........................................................................17

*Marisol A. v. Giuliani*,
  126 F.3d 372, 376 (2d Cir. 1997)........................................................................18

*Marlo v. United Parcel Serv., Inc.*,
   639 F.3d 942 (9th Cir. 2011) .................................................................13

*Marriott v. Cnty. of Montgomery*,
   227 F.R.D. 159 (N.D.N.Y. 2005).............................................................20

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1995).....................................................................8

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) .............................................................21

*McKenna v. Champion Int'l Corp.*,
   747 F.2d 1211 (8th Cir. 1984) .................................................................24

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ...............................................................24

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012).....................................................22

*Myers v Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010).....................................................................13

*Noble v. 93 Univ. Place Corp.*,
   224 F.R.D. 330 (S.D.N.Y. 2004) .............................................................21

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) .............................................................12

*Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*,
   698 F.2d 150 (2d Cir. 1983).....................................................................17

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) ..............................................................17

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993).....................................................................18

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986).....................................................................20

*Torres v. Gristede's Corp.*,
   No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006).........21

*Toure v. Cent. Parking Sys.*,
   No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007).........19

*In re Traffic Exec. Ass'n-E R.Rs.*,
    627 F.2d 631 (2d Cir. 1980)...................................................................................8

*Trinidad v. Breakaway Courier Sys., Inc.*,
    No. 05 Civ. 4116, 2007 WL 103073 (S.D.N.Y. Jan. 12, 2007)...............................19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).................................................................................8, 9

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)..............................................................................8, 11

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998
    (S.D.N.Y. Oct. 2, 2013);.............................................................................. *passim*

*Zivali v. AT&T Mobility, LLC*,
    784 F. Supp. 2d 456 (S.D.N.Y. 2011)...................................................................13

**Rules**

29 U.S.C. § 216(b)..................................................................................................14

Fed. R. Civ. P. 23(e)............................................................................................6, 15

Fed. R. Civ. P. 23(g)(1)(A).......................................................................................23

Fed. R. Civ. P. 23(g)(1)(B).......................................................................................23

**Other Authorities**

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §§ 11.22
    (4th ed. 2002)..............................................................................6, 8, 9, 16

## INTRODUCTION

Subject to Court approval, Plaintiffs Dana Aboud, William Hicks, Michael Porowski, and Albert Schweizer (together, "Plaintiffs") and Defendant Charles Schwab & Co., Inc. ("Schwab" or "Defendant") have settled this wage and hour class and collective action for significant monetary relief of $3,800,000.

The proposed settlement satisfies all of the criteria for preliminary approval under federal law.  Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Joint Stipulation of Settlement and Release ("Settlement Agreement"), attached as Exhibit A to the Declaration of Justin M. Swartz ("Swartz Decl."); (2) certify the proposed classes for settlement purposes; (3) appoint Outten & Golden LLP ("O&G") and the Shavitz Law Group, P.A. ("Shavitz Law Group") as Class Counsel ("Class Counsel"); and (4) approve the proposed Notice of Pendency of Class Action and Opportunity to Opt In, Proposed Settlement, and Hearing Date for Court Approval ("Rule 23 Notice of Pendency") and Consent to Join Settlement and Claim Form (attached as Exhibit B to the Swartz Declaration), and the Proposed Notice of Pendency of Collective Action and Opportunity to Opt In, Proposed Settlement, and Hearing Date for Court Approval ("Non-Rule 23 Notice of Pendency") and Consent to Join Settlement and Claim Form (attached as Exhibit C to the Swartz Declaration)  (together, "Proposed Notices") and direct their distribution.  Although Schwab denies Plaintiffs' allegations, the parties have decided that a settlement is in their best interests.  Accordingly, Schwab does not oppose the approval of the settlement sought by this motion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Plaintiffs and Class Members are current and former employees of Schwab who have

worked in the position of Associate Financial Consultant ("AFC") or International CDT Financial Consultant ("Intl CDT-FC") in California from November 7, 2009 to February 15, 2014; the position of AFC or Intl CDT-FC in any state or territory other than California from November 7, 2010 to February 15, 2014; the position of CDT-FC/BET-FC ("CDT-FC") from November 7, 2010 to February 15, 2014; and/or the position of AT Sales Specialist or Sr. AT Sales Specialist ("ATS") from November 7, 2010 to February 28, 2011 (collectively, "Covered Positions"). Plaintiffs alleged that Schwab violated the Fair Labor Standards Act ("FLSA"), California law, and various other state wage and hour laws by improperly classifying them and other employees in the Covered Positions as exempt from federal and state overtime laws and failing to pay them overtime wages. Swartz Decl. ¶ 23.

**B.   Overview of Investigation**

Before the initiation of this action, Plaintiffs conducted a thorough investigation into the merits of the potential claims and defenses. Swartz Decl. ¶ 14. Plaintiffs focused their investigation and legal research on the underlying merits of Class Members' claims, the damages to which they were entitled, and the propriety of class certification. *Id.* ¶ 14. Plaintiffs' Counsel conducted in-depth interviews with the four Plaintiffs and approximately two dozen other former Schwab employees to determine the hours that they worked, the wages they were paid, the nature of their duties and responsibilities, and other information relevant to Plaintiffs' claims. *Id.* ¶ 15. Plaintiffs' Counsel also obtained and reviewed numerous documents from Plaintiffs related to their employment with Schwab. *Id.* Plaintiffs conducted in-depth background research on Schwab, including reviewing SEC filings, job postings, and other public documents, to obtain information on Schwab's corporate structure, locations, and compensation policies. *Id.* ¶ 16.

### C.    Settlement Negotiations

On December 18, 2012, Plaintiffs sent Schwab a letter in which they summarized their potential claims and invited Schwab to engage in pre-litigation settlement discussions.  Swartz Decl. ¶ 17.  In response to the letter, the parties agreed to engage in pre-litigation discussions in order to determine whether to pursue settlement discussions.  Over the next several months, the parties exchanged extensive correspondence and engaged in several telephone conferences, in which the parties vigorously debated the strengths and weakness of the claims and defenses.  *Id.* ¶ 18.  Prior to the parties' mediation, Defendant produced various documents, including job descriptions for the Covered Positions; copies of Schwab's corporate policies regarding hours of work, overtime, and time-keeping; data reflecting the current hours of operation of all the relevant Schwab branches and call centers; and data listing all potential class members in the Covered Positions by unique identifier, job titles, salaries, incentive pay, dates of employment, and locations of employment.  *Id.* ¶ 19.

On September 10, 2013, the parties attended a mediation session in San Francisco with David Rotman, Esq., a well-known and experienced mediator in wage and hour law.  After mediating for over fifteen hours, the parties reached agreement on the settlement amount and several other key terms.  Swartz Decl. ¶ 20.  During the next several months, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal Joint Settlement and Release ("Settlement Agreement").  *Id.* ¶ 21.   At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis.  *Id.* ¶ 22.

### D.    Litigation

As contemplated in the Settlement Agreement, on April 16, 2014, Plaintiffs filed a Class Action Complaint against Defendant in the United States District Court for the Southern District

of New York on behalf of themselves and others similarly situated alleging that Defendant violated the Fair Labor Standards Act ("FLSA"), California law, and various other state wage and hour laws by improperly classifying them and employees in the Covered Positions as exempt from overtime requirements, and failing to pay them overtime wages.  Swartz Decl. ¶ 23.

## II.  SUMMARY OF THE SETTLEMENT TERMS

### A.  The Settlement Fund

The Settlement Agreement creates a claims-made fund of Three Million Eight Hundred Thousand and No/100ths Dollars ($3,800,000.00) to settle claims against the Defendant (the "Fund").   Swartz Decl. ¶ 24; Ex. A (Settlement Agreement) §§ 22, 28.  The Fund covers Class Members' awards, service awards, attorneys' fees and costs, settlement administrator's fees and costs, and civil penalties paid to the California Workforce Development Agency.  Swartz Decl. ¶ 24; Ex. A (Settlement Agreement) § 28(a).

### B.  Eligible Employees

Class Members who are entitled to receive payments from the Fund include two groups of persons employed by Schwab in the Covered Positions (together, "Class Members"):

1.   "Rule 23 Class Members" means all persons who worked for Schwab in the position of AFC or Intl CDT-FC in California from November 7, 2009 to February 15, 2014; and

2.   "Non-Rule 23 Class Members" means all persons who work or worked for Schwab in the Covered Positions in the United States and certain United States territories who are not Rule 23 Class Members.  This includes all persons who worked for Schwab in the position of AFC or Intl CDT-FC in any state or territory other than California from November 7, 2010 to February 15, 2014; the position of CDT-FC from November 7, 2010 to February 15, 2014; and/or the position of ATS from November 7, 2010 to February 28, 2011.

Swartz Decl. ¶ 25; Ex. A (Settlement Agreement) §§ 15, 19.

### C.  Releases

The Settlement Agreement provides that all Rule 23 Class Members who do not opt out

4

of the settlement, and all Non-Rule 23 Class Members who submit valid and timely Consent to

Join Settlement and Claim Forms, will release their state and non-FLSA federal law claims. *Id.*

§ 47. All Class Members who submit valid and timely Consent to Join Settlement and Claim

forms will release their FLSA claims. *Id.* § 48. Class Representatives will release Schwab from

any and all claims arising during the period from the beginning of their respective dates of

Schwab employment, to the date on which the Court's final approval of the Settlement no longer

is appealable. *Id.* § 49.

**D.      Allocation Formula**

Class Members will be paid pursuant to an allocation formula based on the number of

compensable weeks for which they were employed during the relevant limitations periods,

whether they worked in California, and in which Covered Position(s) they were employed by

Schwab. Ex. A (Settlement Agreement) § 31. Courts have approved similar allocation formulas

in other wage and hour class action settlements that included nationwide FLSA claims and

multiple state law class claims. The formula reflects differences in the remedies available under

California law, the more favorable requirement under California law that exempt employees

perform exempt duties more than 50% of their working time, the average level of total

compensation and hours worked of employees in the relevant job title, and the relative likelihood

of success on the claims of employees in the relevant job title. Swartz Decl. ¶¶ 26-28.

The net settlement fund (the fund less attorneys' fees and costs, service awards, claims

administration fees, and LWDA payment) divided by the number of Class Members yields an

amount of approximately $4,000. Swartz Decl. ¶ 29.

**E.      Attorneys' Fees, Litigation Costs, and Service Awards**

Out of the $3,800,000.00 Settlement sum, Plaintiffs' Counsel will seek $1,266,666.67 in

attorneys' fees, subject to the Court's approval.   Ex. A (Settlement Agreement) § 28(a).

Plaintiffs' Counsel will also seek reimbursement for their actual litigation costs and expenses

from the Fund, in an amount not to exceed $30,000.  *Id.* § 28(a).  The Court need not decide the

attorneys' fees and costs issue now.  Pursuant to Federal Rule of Civil Procedure 23(h) and

54(d)(2), Plaintiffs' Counsel will file a Motion for Approval of Attorneys' Fees, Service Awards,

and Reimbursement of Expenses along with their Motion for Final Approval of the Settlement.

Plaintiffs will also apply for service awards of $7,500 each in recognition of the services

they rendered on behalf of the class ("Service Awards").  Ex. A (Settlement Agreement) §§

28(a), 30.  The Court need not rule on the proposed Service Awards now.  Plaintiffs will move

for Court approval of the Service Awards simultaneously with Plaintiffs' Motion for Final

Approval of the Settlement, pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2).

F.      **Settlement Claims Administrator**

After soliciting competitive bids, the parties have jointly selected CPT Group to serve as

the Settlement Claims Administrator ("Claims Administrator"), whose fees will be paid from the

fund.  Swartz Decl. ¶ 30; Ex. A (Settlement Agreement) §§ 3, 28(a).

III.    **CLASS ACTION SETTLEMENT PROCEDURE**

The well-defined class action settlement procedure includes three distinct steps: (1)

preliminary approval of the proposed settlement after submission to the Court of a written

motion for preliminary approval; (2) dissemination of notice of settlement to all affected class

members; and (3) a final settlement approval hearing at which class members may be heard

regarding the settlement, and at which argument concerning the fairness, adequacy, and

reasonableness of the settlement may be presented.  *See* Fed. R. Civ. P. 23(e); *see also* 4 Alba

Conte & Herbert B. Newberg, *Newberg on Class Actions* ("*Newberg*") §§ 11.22, *et seq.* (4th ed.

2002).  This process safeguards class members' procedural due process rights and enables the

Court to fulfill its role as the guardian of class interests.  With this motion, Plaintiffs request that

the Court take the first step – granting preliminary approval of the Settlement Agreement,

conditionally certifying the settlement class, approving Plaintiffs' Proposed Notices, and

authorizing Plaintiffs to send it.

The parties respectfully submit the following proposed schedule for final resolution of

this matter for the Court's consideration and approval:

1.      Schwab will provide to the Claims Administrator, within 10 days following the
        Court's approval of the Proposed Notices, a confidential database of all putative
        Class Members.  Ex. A (Settlement Agreement) § 33.

2.      The Rule 23 Notice of Pendency will be mailed to Rule 23 Class Members, by
        first class mail, within 30 days after the Court approves of the Rule 23 Notice of
        Pendency.  The Non-Rule 23 Notice of Pendency will be mailed to non-Rule 23
        Class Members, by first class mail, within 30 days after the Court approves the
        Non-Rule 23 Notice of Pendency.  *Id.* §§ 32, 37.

3.      Rule 23 Class Members will have 30 days from mailing of the Notice of
        Pendency and Consent to Joint Settlement and Claim Form to object to the
        settlement.  *Id.* § 40.

4.      Class Members will have 60 days from the mailing of the Notice of Pendency and
        Consent to Join Settlement and Claim Form to complete and return the form.  *Id.*
        §§ 31, 39.  Rule 23 Class Members will have 60 days from the mailing of the
        Notice of Pendency and Consent to Join Settlement and Claim Form to opt out of
        the settlement.  *Id.* § 39.

5.      A final fairness hearing will be held as soon as is convenient for the Court.

6.      Plaintiffs will file a Motion for Final Approval of Settlement no later than 15 days
        before the Fairness Hearing.

7.      After the final fairness hearing, if the Court grants Plaintiffs' Motion for Final
        Approval of the Settlement, the Court will issue a Final Order and Judgment.  If
        no party appeals the Court's Final Order and Judgment, the "Settlement Effective
        Date" will be when the date and time to seek permission to appeal or seek other
        judicial review of the entry of a Final Judgment approving the Settlement has
        expired.  *Id.* § 21(a).

6.      If an appeal or other judicial review has been taken or sought, the "Settlement

7

Effective Date" will be the date that the Final Judgment is finally affirmed by an appellate court with no possibility of subsequent appeal or other judicial review, or the date the appeal(s) or other judicial review are finally dismissed with no possibility of subsequent appeal or other judicial review. *Id.* § 21(b).

7.   The Settlement Claims Administrator will mail Settlement payments to eligible Class Members, the enhancement payments to the Class Representatives, and the payment of attorneys' fees and costs to Class Counsel within five business days following the Settlement Effective Date. *Id.* § 31(h).

## IV.   PRELIMINARY APPROVAL  OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "'strong judicial policy in favor of settlements, particularly in the class action context'") (citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").  The trial court has discretion to approve of a proposed class action settlement. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).  "[C]ourts should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ." *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks and citations omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Id.* at *3 (citing *Newberg* § 11.25).  To grant preliminary approval, the Court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-E R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980) (citation omitted); *Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within

the range of possible approval," the court should permit notice of the settlement to be sent to class members).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks and citation omitted).

If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05 Civ. 10240, 05 Civ. 10287, 05 Civ. 10515, 05 Civ. 10610, 06 Civ. 304, 06 Civ. 347, 06 Civ. 1684, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Preliminary approval is the first step in the settlement process. It simply allows notice to issue and for Class Members to object to or opt out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of Class Members' input.

### A.     The Settlement Is Fair, Reasonable, and Adequate.

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds, Goldberg v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("*Grinnell*"). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," *id.* at § 11.26, it is

useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial;  (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.  All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

### 1.    Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a favorable settlement before filing a complaint, let alone dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case is no exception, with approximately 600 Class Members and claims under the federal and state law.  Swartz Decl. ¶ 31.

Litigation would cause additional expense and delay.  Extensive discovery would be required to establish potential liability and damages.  In addition, the parties likely would have filed cross-motions for summary judgment on Defendant's exemption defense, and it is not certain that Plaintiffs would prevail.  *See, e.g.*, *Hein v. PNC Fin. Servs. Grp.*, 511 F. Supp. 2d 563 (E.D. Pa. 2007) (finding securities broker in putative collective action was properly

classified as exempt under administrative exemption).  Even if the Court denied the motions, a lengthy, fact-intensive trial would be necessary to determine Plaintiffs' and Class Members' exemption status.  Any judgment would likely be appealed, further extending the litigation.  The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### 2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

Notice of the settlement and its details has not yet issued to the class.  The Court should more fully analyze this factor after notice issues and Class Members are given the opportunity to opt out or object.  At this early stage in the process, given that all Plaintiffs have indicated their support of the settlement by signing the Settlement Agreement, this factor weighs in favor of preliminary approval.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

Although preparing this case through trial would require hundreds of hours of discovery for both sides, the parties have completed enough discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin*, 391 F.3d at 537.  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted).

The parties' discovery here meets this standard.  As set forth above in Section I.B, Plaintiffs' Counsel conducted a thorough and extensive investigation into the merits of the potential claims and defenses.  Swartz Decl. ¶¶15-16.  Defendant also produced numerous

documents prior to the parties' mediation, including corporate policies and data regarding

potential class members by unique identifier, job titles, salaries, incentive pay, dates of

employment, and locations of employment.  *See supra* Section I.C; Swartz Decl. ¶ 19.  The

thoroughness of the informal discovery performed here favors preliminary approval.  *See, e.g.*,

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (granting final approval of

class settlement reached prior to filing suit, where parties engaged in "an efficient, informal

exchange of information"); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912,

at *5-6 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement, where

parties engaged in informal discovery consisting of pre-suit document exchange).

Courts encourage early settlement of class actions, when warranted, because early

settlement allows class members to recover without unnecessary delay and allows the judicial

system to focus resources elsewhere.  *Beckman*, 293 F.R.D. at 474-75; *Yuzary v. HSBC Bank

USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *5 (S.D.N.Y. Oct. 2, 2013); *see also In re

Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6

(S.D.N.Y. Jun. 7, 2011) (commending plaintiffs' attorneys for negotiating early settlement); *In re

Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004)

(encouraging early settlements when warranted by the circumstances of the case).  The parties

here acted responsibly in reaching a pre-suit settlement.  *See id*. at *12.

### 4.    Plaintiffs Would Face Real Risks If the Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiffs believe their case is strong, it is subject to considerable risk.

"Litigation inherently involves risks."  *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104,

126 (S.D.N.Y. 1997).  "If settlement has any purpose at all, it is to avoid a trial on the merits

because of the uncertainty of the outcome."  *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934

(S.D.N.Y. 1969).  In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).

A trial on the merits would involve significant risks for Plaintiffs as to both liability and damages.  Plaintiffs would have to overcome Schwab's defense that Plaintiffs and Class Members were subject to the administrative exemption to the FLSA and corresponding state law exemptions.  *See, e.g.*, *Hein*, 511 F. Supp. 2d 563 (finding securities broker in putative collective action was properly classified as exempt under administrative exemption).

While Plaintiffs believe that they could ultimately establish Defendant's liability, this would require significant factual development.  Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the appeals process are inherently uncertain in terms of outcome and duration.  The proposed settlement alleviates these uncertainties.  This factor therefore weighs in favor of preliminary approval.

## 5.   Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).

The risk of obtaining class certification and maintaining it through trial is also present. The Court has not yet certified the Rule 23 Class.  The parties anticipate that such a determination would be reached only after further discovery and intense, exhaustive briefing.  In opposing class certification, Defendant would likely argue that the differences among various job positions and worksites and other individualized questions preclude class certification.  Although Plaintiffs disagree with these arguments, defendants have prevailed on arguments like these. *See, e.g.*, *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011) (affirming decertification, citing variations in job duties, management, and customer bases); *Myers v Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010) (affirming denial of class certification in

13

misclassification case based on evidence that class members' duties varied by location).  Risk, expense, and delay permeate such processes.  Settlement eliminates this risk, expense, and delay.  This factor favors preliminary approval.

In addition, the Court has not yet granted permission for Plaintiffs to proceed on their FLSA claims on behalf of a collective pursuant to 29 U.S.C. § 216(b).  If the Court did authorize notice to the FLSA collective, Defendant would likely challenge that determination at a later date, after the close of discovery.  *See, e.g.*, *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) (granting motion to decertify collective action).  Settlement eliminates the risk and delay inherent in this process.

### 6. Defendant's Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7).

There is no evidence here that Defendant could not withstand a greater judgment.  However, even if Defendant could withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9).  In recent years, however, even some of the largest financial institutions have failed, leaving the class with no recourse.  *See, e.g.*, *Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp. 2d 441, 446-51 (S.D.N.Y. 2010) (finding plaintiffs' wage and hour claims against Washington Mutual's successors in interest to be barred).  Therefore, this factor is neutral and does not preclude the Court from granting preliminary approval.

### 7. The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).

Schwab has agreed to settle this case for a substantial amount, $3,800,000.  This amount represents substantial value given the attendant risks of litigation, even though recovery could be

greater if Plaintiffs attained class and collective certification, overcame motions to decertify any class or collective, succeeded on all claims at trial, and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (internal citation omitted).  "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2.

Here, the net settlement fund (the fund less attorneys' fees and costs, service awards, claims administration fees, and LWDA payment) divided by the number of Class Members yields an amount of approximately $4,000.  Swartz Decl. ¶ 29.  Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

The *Grinnell* factors all weigh in favor of issuing preliminary approval of the settlement. In the event that a substantial number of objectors come forward with meritorious objections, the Court may reevaluate its determination.  Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (citation omitted), the Court should grant preliminary approval.

## V.  PROVISIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE.

For settlement purposes, the California Plaintiff Dana Aboud ("California Plaintiff") seeks to certify the Rule 23 Class, as defined in Section II.B.a. above, under Federal Rule of

Civil Procedure 23(e) for purposes of effectuating the settlement.  Specifically, the California

Plaintiff requests that the Court certify a class of all persons who worked for Schwab in the

position of AFC or Intl CDT-FC in California from November 7, 2009 to February 15, 2014.

As discussed below, the Rule 23 Class meets all of the requirements for class certification

for settlement purposes, and Defendant does not oppose provisional certification for settlement

purposes only.  Ex. A (Settlement Agreement) §§ 23, 25; *see also Newberg* § 11.27 ("When the

court has not yet entered a formal order determining that the action may be maintained as a class

action, the parties may stipulate that it be maintained as a class action for the purpose of

settlement only."); *Cnty. of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424

(E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed

settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other*

*grounds*, 907 F.2d 1295 (2d Cir. 1990).

Provisional settlement class certification and appointment of class counsel have several

practical purposes, including avoiding the costs of litigating class status while facilitating a

global settlement, ensuring notification of all Class Members of the terms of the proposed

Settlement Agreement, and setting the date and time of the final approval hearing.  *See In re*

*Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir.

1995) (noting practical purposes of provisionally certifying settlement class); *Dorn v. Eddington*

*Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *1 (S.D.N.Y. Jan. 21, 2011) (conditionally

certifying wage and hour settlement class and granting preliminary approval of settlement).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are

met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that: (1) the class is so

numerous that joinder of all members is impracticable; (2) there are questions of law or fact

16

common to the class; (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class; and (4) the representative parties will fairly and adequately

protect the interests of the class.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find

that "questions of law or fact common to the class members predominate over any questions

affecting only individual members, and that a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy."  *Id.* at (b)(3).  In the Second Circuit,

"Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of

flexibility" in evaluating class certification.  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,

237 F.R.D. 26, 31 (E.D.N.Y. 2006) (internal quotation marks and citation omitted).

### A.    Numerosity

"[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of*

*Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  The California Plaintiff easily satisfies this

requirement because there are approximately 150 Rule 23 Class Members.  Swartz Decl. ¶ 31.

### B.    Commonality

The proposed settlement class also satisfies the commonality requirement, the purpose of

which is to test "whether the named plaintiff's claim and the class claims are so interrelated that

the interests of the class members will be fairly and adequately protected in their absence."  *Gen.*

*Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be

identical, they must share common questions of fact or law.  *Port Auth. Police Benevolent Ass'n,*

*Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983).  The proper question is

whether there is a "unifying thread" among the claims to warrant class certification.  *Kamean v.*

*Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Courts construe the

commonality requirement liberally.  *Frank*, 228 F.R.D. at 181 (citation omitted).

The California Plaintiff contends this case involves numerous common issues. The California Plaintiff and the Rule 23 Class Members all bring the identical claims that Defendant misclassified them as exempt employees and failed to pay them overtime wages in violation of state wage and hour laws. Other common issues include, but are not limited to, (a) whether Defendant maintained true and accurate time records for all hours worked by the California Plaintiff and Rule 23 Class Members; (b) what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records; and (c) whether Defendant acted willfully or in reckless disregard of the statute. *See Yuzary*, 2013 WL 5492998, at *3 (commonality satisfied where, among other allegations, plaintiffs claimed that "Defendants misclassified them as exempt employees, failed to pay them overtime wages in violation of state wage and hour laws, and failed to keep accurate records of time worked"); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *3 (S.D.N.Y. May 11, 2010) (same).

### C.    Typicality

Rule 23 requires that the claims of the representative party be typical of the claims of the class. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotations omitted). "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendants direct "the same unlawful conduct" at the named plaintiff and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Courts evaluate typicality "with reference to the company's

18

actions, not with respect to particularized defenses it might have against certain class members."

*Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 WL 103073, at *6 (S.D.N.Y.

Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

The California Plaintiff's claims arise from the same factual and legal circumstances that

form the bases of the Rule 23 Class Members' claims.  Defendant classified the California

Plaintiff and Rule 23 Class Members as exempt from overtime pursuant to the same company

policy and pattern or practice.  The California Plaintiff shared the same or similar job titles and

alleged that he had the same or similar job duties as Rule 23 Class Members.  He also claims the

same injuries as do Rule 23 Class Members – that Defendant failed to properly pay them for

overtime hours worked.  Accordingly, the California Plaintiff satisfies the typicality requirement.

*See Yuzary*, 2013 WL 5492998, at *3 (S.D.N.Y. Oct. 2, 2013) (typicality satisfied "because

Plaintiffs' claims arose from the same factual and legal circumstances that form the bases of the

class members' claims") (citations omitted); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11

Civ. 8472, 2012 WL 5862749, at *3 (S.D.N.Y. Mar. 21, 2013) (same).

### D.      Adequacy of the Named Plaintiffs

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure

that the named representative will 'have an interest in vigorously pursuing the claims of the

class, and . . . have no interests antagonistic to the interests of other class members.'"  *Toure v.*

*Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007)

(citation omitted).  "[O]nly a conflict that goes to the very subject matter of the litigation will

defeat a party's claim of representative status."  *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007

WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks and citation omitted).

19

The California Plaintiff meets the adequacy requirement because there is no evidence that he has interests that are antagonistic to or at odds with those of Rule 23 Class Members.  *See Yuzary*, 2013 WL 5492998, at *3 (S.D.N.Y. Oct. 2, 2013) (adequacy met where there was no evidence that named plaintiffs' and class members' interests were at odds); *Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 1656920, at *2 (S.D.N.Y. May 9, 2012) (same).  Plaintiffs' Counsel also meet the adequacy requirement of Rule 23(a)(4).  *See* Swartz Decl. ¶ 12; Shavitz Decl. ¶ 6.

### E.    Certification Is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  That the California Plaintiff easily meets the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied.  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

### 1.    Common Questions Predominate

To establish predominance, the California Plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof."  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007) (internal quotation marks and citation omitted).  The essential inquiry is whether "'liability can be determined on a class-wide basis, even when there are some individualized damage issues.'"

*Marriott v. Cnty. of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (citation omitted).

Simply because a defense "'may arise and [] affect different class members differently does not

compel a finding that individual issues predominate over common ones.'" *Noble v. 93 Univ.*

*Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (citation omitted).  Where plaintiffs are

"unified by a common legal theory" and by common facts, the predominance requirement is

satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).  The

predominance requirement "is more demanding than the Rule 23(a) commonality inquiry and is

designed to determine whether 'proposed classes are sufficiently cohesive to warrant

adjudication by representation.'"  *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623).

Here, the California Plaintiff contends that Rule 23 Class Members' common factual

allegations and common legal theory – that Defendant violated federal and state wage and hour

laws by misclassifying them as exempt employees and failing to pay them for premium overtime

hours – predominate over any factual or legal variations among Rule 23 Class Members.  *See*

*Yuzary*, 2013 WL 5492998, at *4 (finding plaintiffs' common factual allegations and common

legal theory predominate over any factual or legal variations among class members in wage and

hour misclassification case); *Clark*, 2009 WL 6615729, at *5 (same); *Torres v. Gristede's Corp.*,

No. 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced

sufficient proof that Defendants engaged in a common practice to deny employees overtime

pay[,]" and "[t]his issue predominates over any individual calculations of overtime wages").

### 2.    A Class Action Is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether

"the class action device [is] superior to other methods available for a fair and efficient

adjudication of the controversy."  *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968);

*Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (internal quotation marks and citation omitted).  Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: "the class members' interests in individually controlling the prosecution or defense of separate actions"; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).

Here, the California Plaintiff and Rule 23 Class Members have limited financial resources with which to prosecute individual actions, and he is unaware of any pending individual lawsuits filed by Rule 23 Class Members arising from the same allegations. Employing the class device for settlement purposes here will not only achieve economies of scale for putative Rule 23 Class Members, but will also conserve the resources of the judicial system by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims.  *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. at 152, 161, 164 (S.D.N.Y. 2008).  A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the California Plaintiff's and Rule 23 Class Members' claims.

## VI.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

O&G and Shavitz Law Group should be appointed as Class Counsel.  Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2)

"counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law; and" (4) "the resources that counsel will commit to representing the class".  Fed. R. Civ. P. 23(g)(1)(A).

The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(g)(1)(B).  The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case."  Fed. R. Civ. P. 23(g) advisory committee's note.

Plaintiffs' Counsel meet all of these criteria.  As set forth in the Swartz Declaration, Plaintiffs' Counsel have done substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and Class Members' claims.  Swartz Decl. ¶¶ 13-23.  Additionally, Plaintiffs' Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and the O&G and Shavitz Law Group lawyers assigned to this matter are well-versed in wage and hour law and in class action law and are well-qualified to represent the interests of the class.  Swartz Decl. ¶¶ 6-12; Shavitz Decl. ¶¶ 4-6.  Accordingly, courts have repeatedly found Plaintiffs' Counsel to be adequate class counsel in wage and hour class actions.  Swartz Decl. ¶ 12; Shavitz Decl. ¶ 6.

## VII.   THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE

The content of the Proposed Notices, which are attached to the Swartz Declaration as Exhibits B and C, fully complies with due process and Federal Rule of Civil Procedure 23.  Pursuant to Rule 23(c)(2)(B), notice must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  It must also "clearly and concisely state in plain, easily understood language": (i) the nature of the action; (ii) the definition of the class certified; (iii) the class

claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

The Proposed Notices here satisfy each of these requirements and fully comply with the requirements of Rule 23(c)(2)(B).  They also describe the terms of the settlement, inform the class about the allocation of attorneys' fees, and provide specific information regarding the date, time, and place of the final approval hearing.  Courts have approved class notices even when they provided only general information about a settlement.  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"); *see also Dorn*, 2011 WL 382200, at *4 (class notice "need only describe the terms of the settlement generally" (internal quotation marks and citation omitted)).

The Settlement Agreement provides that the Proposed Notices will be mailed by the Claims Administrator to the last known address of each Class Member within 30 days after the Court approves the Notice.  Ex. A (Settlement Agreement) §§ 32, 37.  It also provides steps the Claims Administrator will take for any Class Member whose notice is returned as undeliverable, the amount of time Rule 23 Class Members will have to object to the settlement (30 days) and opt out of the settlement (60 days), and when the Claims Administrator will mail payment 5 business days following the Settlement Effective Date).  *Id.* §§ 31(h), 34, 39, 40.

## VIII.   PLAINTIFFS WILL SEEK APPROVAL OF THE FLSA SETTLEMENT

Plaintiffs will seek approval of the settlement of the FLSA claims separately from their Rule 23 claims. The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as

does a Rule 23 settlement.  *See McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984) (explaining that FLSA collective actions do not implicate the same due process concerns as Rule 23 actions because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date").  When Plaintiffs file their motion for final approval of the settlement, they will seek approval of the FLSA settlement.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement and enter the Proposed Order.


Dated:  June 13, 2014
New York, New York

Respectfully submitted,
**OUTTEN & GOLDEN LLP**

/s/ Justin M. Swartz
Justin M. Swartz

Justin M. Swartz
Deirdre Aaron
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:  (212) 977-4005

Jennifer L. Liu
One Embarcadero Center, 38th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile: (646) 509-2092

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

**Attorneys for Plaintiffs and the Putative**

**Class and Collective**