# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANA ABOUD, WILLIAM HICKS, MICHAEL POROWSKI, and ALBERT SCHWEIZER, individually and on behalf all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHARLES SCHWAB & CO., INC.,<br><br>Defendant. | No. 14 Civ. 2712 (PAC) |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, APPROVAL OF THE FLSA SETTLEMENT, AND APPROVAL OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS**

Plaintiffs Dana Aboud, William Hicks, Michael Porowski, and Albert Schweizer (together, "Plaintiffs") and Class Members are current and former employees of Schwab who have worked in the position of Associate Financial Consultant ("AFC") or International CDT Financial Consultant ("Intl CDT-FC") in California from November 7, 2009 to February 15, 2014; the position of AFC or Intl CDT-FC in any state or territory other than California from November 7, 2010 to February 15, 2014; the position of CDT-FC/BET-FC ("CDT-FC") from November 7, 2010 to February 15, 2014; and/or the position of AT Sales Specialist or Sr. AT Sales Specialist ("ATS") from November 7, 2010 to February 28, 2011 (collectively, the "Covered Positions"). On April 16, 2014, Plaintiffs commenced this case as a putative class action under Federal Rule of Civil Procedure 23 and as a collective action under 29 U.S.C. § 216(b), claiming that Schwab classified them and employees in the Covered Positions as exempt

from overtime requirements. Plaintiffs sought unpaid overtime wages, attorneys' fees and costs, interest, liquidated damages, and injunctive and declaratory relief.

After exchanging informal discovery to enable Plaintiffs to calculate damages and undertaking extensive and vigorous negotiations, the parties reached a settlement totaling $3.8 million. Decl. of Justin M. Swartz in Supp. of Pls.' Mot. for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Swartz Decl.") ¶¶ 10-12. The parties reached this settlement after a formal mediation under the supervision of a David Rotman, Esq., a well-known and experienced mediator in wage-and-hour law. *Id.* ¶ 11. During the next several months following the mediation, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal settlement agreement ("Settlement Agreement"). *Id.* ¶ 12.

On June 30, 2014, this Court entered an Order preliminarily approving the settlement on behalf of the class set forth therein (the "Class" or the "Class Members"), conditionally certifying the settlement class, appointing Outten & Golden LLP and Shavitz Law Group, P.A. as Class Counsel, and authorizing notice to all Class Members. ECF No. 33.

On August 1, 2014, a claims administrator sent Court-approved notices to all Class Members informing them of their rights under the settlement, including the right to opt out or object to the settlement for Class Members in California where Rule 23 claims were brought, and of Class Counsel's intention to seek service awards for the Plaintiffs, up to one third of the settlement fund for attorneys' fees, and their out-of-pocket expenses. Swartz Decl., Ex. E (Morales Decl.) ¶ 8; Ex. F (Rule 23 Notice of Pendency); Ex. G (Non-Rule 23 Notice of Pendency). No Class Members objected to the settlement, and no Rule 23 Class Members opted out of the settlement. Swartz Decl., Ex. E (Morales Decl.) ¶¶ 12, 15.

On October 14, 2014, Plaintiffs filed a Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval"). That same day, Plaintiffs also filed Motions for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and for Service Awards ("Motion for Service Awards").

The Court held a fairness hearing on October 29, 2014. No Class Member objected to the settlement at the hearing.

Having considered the Motion for Final Approval, the Motion for Attorneys' Fees and Reimbursement of Expenses, the Motion for Service Awards, and the supporting declarations, the oral argument presented at the October 29, 2014 fairness hearing, and the complete record in this matter, for the reasons set forth therein and stated on the record at the October 29, 2014 fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**CERTIFICATION OF THE SETTLEMENT CLASS**

1.   The Court certifies the following class under Federal Rule of Civil Procedure 23(e), for settlement purposes (the "Rule 23 Class Members"): all persons who worked for Schwab in the position of AFC or Intl CDT-FC in California from November 7, 2009 to February 15, 2014.

2.   Plaintiff Aboud (the "California Plaintiff") meets all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3).

3.   The California Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(1) because there are approximately 115 Rule 23 Class Members and, thus, joinder is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is

presumed at a level of 40 members.").

4. The proposed class also satisfies Federal Rule of Civil Procedure 23(a)(2), the commonality requirement. The California Plaintiff and Rule 23 Class Members share common issues of fact and law, including whether Schwab misclassified them as exempt employees and failed to pay them overtime in violation of state wage and hour laws, and maintained true and accurate time records for all hours worked by the California Plaintiff and Rule 23 Class Members. *See Yuzary v. HSBC Bank, USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *3 (S.D.N.Y. Oct. 2, 2013) (commonality satisfied where, among other allegations, plaintiffs claimed that "Defendants misclassified them as exempt employees, failed to pay them overtime wages in violation of state wage and hour laws, and failed to keep accurate records of time worked"); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC), 2010 WL 1948198, at *3 (S.D.N.Y. May 11, 2010) (same).

5. The California Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(3), typicality, because the California Plaintiff's claims arose from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims. *See Yuzary*, 2013 WL 5492998, at *3 (typicality satisfied "because Plaintiffs' claims arose from the same factual and legal circumstances that form the bases of the class members' claims") (citations omitted); *Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472, 2012 WL 5862749, at *3 (S.D.N.Y. Mar. 21, 2013) (same).

6. The California Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that the California Plaintiff's and the Class Members' interests are at odds. *See Yuzary*, 2013 WL 5492998, at *3 (S.D.N.Y. Oct. 2, 2013) (adequacy met where there was no evidence that named plaintiffs' and class members' interests were at odds); *Morris v. Affinity*

4

*Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (same).

7. The California Plaintiff also satisfies Rule 23(b)(3). The California Plaintiff and Rule 23 Class Members' common factual allegations and common legal theory – that Schwab violated federal and state wage and hour laws by misclassifying them as exempt employees and failing to pay them overtime hours – predominate over any factual or legal variations among Rule 23 Class Members. *See Clem v. Keybank, N.A.*, No. 13 Civ. 789, 2014 WL 2895918, at *3 (S.D.N.Y. June 20, 2014) (finding plaintiffs' common factual allegations and common legal theory predominate over any factual or legal variations among class members in wage and hour misclassification case); *Yuzary*, 2013 WL 5492998, at *4 (same); *Clark*, 2009 WL 6615729, at *5 (same).

8. Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Rule 23 Class Members, particularly those who lack the resources to bring their claims individually. *See Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *7 (S.D.N.Y. Sept. 16, 2011). The California Plaintiff and Rule 23 Class Members have limited financial resources with which to prosecute individual actions. Concentrating the litigation in this Court is desirable because Schwab regularly conducts business in this jurisdiction and some of the allegedly wrongful conduct occurred within its jurisdiction. Employing the class device here will not only achieve economies of scale for class members, but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and preventing inconsistent adjudications. *See Morris*, 859 F. Supp. 2d at 617; *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161, 164 (S.D.N.Y. 2008).

**APPROVAL OF THE SETTLEMENT AGREEMENT**

9. The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement.

10. Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

   *Procedural Fairness*

11. The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims. *See Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *2-3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs conducted a thorough investigation and enlisted the services of an experienced employment law mediator. The settlement was reached after the parties had conducted a thorough investigation and evaluated the claims and defenses, and after arm's-length negotiations between the parties. Swartz Decl. ¶¶ 5-13.

12. These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *4 (S.D.N.Y. Aug. 16, 2011).

13. In addition, courts encourage early settlement of class actions, when warranted, because early settlement allows Rule 23 Class Members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474-75, 478 (S.D.N.Y. 2013) (endorsing early settlement of wage and hour class action where parties had engaged in pre-litigation settlement discussions); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case). The parties here acted responsibly in reaching an early pre-suit settlement. *See Beckman*, 293 F.R.D. at 475; *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

### *Substantive Fairness*

14. The settlement is substantively fair. All of the factors set forth in *Grinnell*, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

15. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a

possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463.

16. Litigation through trial would be complex, expensive and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

17. The class's reaction to the settlement was positive. The Rule 23 and Non-Rule 23 Notices included an explanation of the allocation formula and an estimate of each Class Member's award. The Rule 23 Notice also informed Rule 23 Class Members of their right to object to or exclude themselves from the Settlement and explained how to do so. No Class Member objected to the settlement, and no Rule 23 Class Member opted out. This favorable response demonstrates that the class approves of the settlement and supports final approval. *See Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where seven of 2,025 class member submitted timely objections and two requested exclusion) (internal quotation marks and citation omitted); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

18. The parties have completed enough informal discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). Here, Plaintiffs obtained sufficient informal discovery to weigh the strengths and weaknesses of their claims and to accurately estimate the damages at issue. The third *Grinnell* factor weighs in favor of final approval.

19. The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, the primary purpose of settlement is to avoid the

uncertainty of a trial on the merits. *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). Here, Plaintiffs faced numerous risks as to both liability and damages, including overcoming Schwab's defense that Plaintiffs and Class Members were exempt from federal and state overtime requirements, proving willfulness in order to obtain a third year of liability and damages, and overcoming Schwab's likely fluctuating workweek argument. The proposed settlement alleviates these uncertainties. This factor therefore weighs in favor of final approval.

20. The risk of obtaining collective and class certification and maintaining both through trial is also present. Contested collective and class certification motions would likely require extensive discovery and briefing. If the Court did authorize notice to the FLSA collective, Schwab would likely challenge that determination at a later date, after the close of discovery. In opposing class certification, Schwab would likely argue that the differences among various job positions and branches and other individualized questions preclude class certification. Settlement eliminates the risk, expense, and delay inherent in the litigation process. The fifth *Grinnell* factor weighs in favor of final approval.

21. Even if Schwab could have withstood a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000) (alterations and citation omitted)). Thus, this factor is neutral and does not preclude the Court from granting final approval.

22. The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re*

9

*Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178) (internal quotation marks omitted. "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  The seventh *Grinnell* factor weighs in favor of final approval.

**APPROVAL OF THE FLSA SETTLEMENT**

23.     The Court hereby approves the FLSA settlement.

24.     Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions.  *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984); *see Reyes*, 2011 WL 4599822, at *6.  Accordingly, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23.

25.     Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Reyes*, 2011 WL 4599822, at *6.

26.     In this case, the settlement was the result of arm's-length negotiation involving vigorous back and forth.  Swartz Decl. ¶¶ 8-13.  During the entire process, Plaintiffs and Schwab were represented by counsel experienced in wage and hour law.  Accordingly, the Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding that it is fair and reasonable.

**DISSEMINATION OF NOTICE**

27.     Pursuant to the Preliminary Approval Order, the Rule 23 and Non-Rule 23

Notices of Pendency ("Notices") were sent by first-class mail to each respective Class Member at his or her last known address (with re-mailing of returned Notices for which new addresses could be located).  The Court finds that the Notices fairly and adequately advised Class Members of the terms of the settlement, as well as the right of Rule 23 Class Members to opt out of or to object to the settlement, and to appear at the fairness hearing conducted on October 29, 2014.  Class Members were provided with the best notice practicable under the circumstances.

28. The Court further finds that the Notices and their distribution comported with all constitutional requirements, including those of due process.

29. The Court confirms CPT Group as the claims administrator.

**AWARD OF FEES AND COSTS TO CLASS COUNSEL AND AWARD OF SERVICE AWARDS TO PLAINTIFFS**

30. On June 30, 2014, the Court appointed Outten & Golden LLP and Shavitz Law Group, P.A. as Class Counsel because they met all of the requirements of Federal Rule of Civil Procedure 23(g).

31. The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests.  Class Counsel have committed substantial resources to prosecuting this case.

32. The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $1,266,666.67, which is one third of the settlement fund.

33. The trend in this Circuit is to use the percentage-of-the-fund method to compensate attorneys in common fund cases like this one.  *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores*, 396 F.3d at 121; *Reyes*, 2011 WL 4599822, at *7.

34. Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method, *McDaniel*, 595 F.3d at 417 – the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one, *Wal-Mart Stores*, 396 F.3d at 121; *Yuzary*, 2013 WL 5492998, at *9; *Diaz*, 2010 WL 5507912, at *7. The percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks omitted); *Johnson*, 2011 WL 4357376, at *14; *In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 WL 58938, at *2 n.2 (S.D.N.Y. Jan. 3, 2008); *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007). Class Counsel's request for one third of the Fund is reasonable and "consistent with the norms of class litigation in this circuit." *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008).

35. Although *Arbor Hill Concerned Citizens Neighborhood Association v. Cnty. of Albany* does not address a common fund fee petition, it supports class counsel's request for one-third of the fund because "'reasonable, paying client[s]' . . . typically pay one-third of their recoveries under private retainer agreements." *Reyes*, 2011 WL 4599822, at *8 (quoting *Arbor Hill*, 522 F.3d 182, 191 (2d Cir. 2008)) (internal citation omitted). While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports an award of one-third of the fund. *Reyes*, 2011 WL 4599822, at *8; *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010).

36. In addition, in Plaintiffs' retainer agreements with Class Counsel, Plaintiffs

agreed that Class Counsel could apply to the Court for one third of a class-wide recovery and that they would pay Class Counsel one third of any individual recovery. Swartz Decl. ¶ 24. This also provides support for Class Counsel's request for one third of the fund.

37.     No Class Member objected to Class Counsel's request for one third of the fund, which also provides support for Class Counsel's fee request.

38.     All of the factors in *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 48-49 (2d Cir. 2000) weigh in favor of the requested fee award.

39.     Applying the lodestar method as a "cross check," *see id.* at 50, the Court finds that the fee that Class Counsel seeks is reasonable. "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman*, 293 F.R.D. 481 (citations omitted); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 19.6 times lodestar); *Sewell*, 2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers between two and six." (citations omitted)).

40.     Here, the fees sought by Class Counsel, approximately 4.4 times their lodestar, falls within the range granted by courts. This multiplier is well within the range of multiplier that courts in this District and elsewhere have allowed. *See Beckman*, 293 F.R.D. 481 ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); s*ee, e.g.*, *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *Zeltser*, 2014 WL 4816134, at *9-10 (multiplier of 5.1

"falls within the range granted by courts"); *Yuzary*, 2013 WL 5492998, at *11 (awarding multiplier of 7.6 in wage and hour misclassification class action); *Davis*, 827 F. Supp. 2d at 185-86 (awarding multiplier of 5.3 in wage and hour class action); *Buccellato v. AT&T Operations, Inc.*, No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding multiplier of 4.3 in wage and hour class action); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (awarding multiplier of 5.2); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (awarding multiplier of 6); *In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (awarding multiplier of 6.96); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. Jan. 29, 2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n.1, 169 (S.D.N.Y. 1991) (awarding multiplier of 8.74).

41.     The lodestar multiplier Class Counsel seeks is also reasonable because it will diminish over time. *Beckman*, 293 F.R.D. at 482 ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund"); *see also Parker v. Jekyll & Hyde Entm't Holdings*, LLC, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010).  In wage and hour cases, Class Counsel is often called upon to perform work after the final approval hearing, including answering Class Member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund.  *See* Swartz Decl. ¶ 25.

The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request. *See Reyes*, 2011 WL 4599822, at *8.

42.     The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $19,068.28. Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003). Here, Class Counsel's unreimbursed expenses, including court fees, postage fees, transportation, working meals, photocopies, and electronic research, and Plaintiffs' share of the mediator's fees are reasonable and were incidental and necessary to the representation of the class.

43.     The attorneys' fees and the amount in reimbursement of litigation costs and expenses shall be paid from the settlement fund.

44.     The Court finds reasonable service awards of $7,500 each to Plaintiffs Dana Aboud, William Hicks, Michael Porowski, and Albert Schweizer. These amounts shall be paid from the settlement fund.

45.     Service awards are common in class action cases and serve to "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]." *Yuzary*, 2013 WL 5492998, at *12. "Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take." *Id.* (citing *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012)).

46.     The "Settlement Effective Date" shall be the date that the time to appeal or seek

permission to appeal or seek other judicial review of the entry of a Final Judgment approving the Settlement has expired with no appeal or other judicial review having been taken or sought. If a party appeals this Order, the "Settlement Effective Date" shall be the date the Final Judgment is finally affirmed by an appellate court with no possibility of subsequent appeal or other judicial review, or the date the appeal(s) or other judicial review are finally dismissed with no possibility of subsequent appeal or other judicial review. This Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

      47.      By no later than five business days after the date of the Settlement Effective Date, the Claims Administrator shall:

      a.      Mail Class Counsel the payment for attorneys' fees of one-third of the fund ($1,266,66.67) and for $19,068.28 in litigation costs and expenses;

      b.      Mail service awards of $7,500 each to Plaintiffs Dana Aboud, William Hicks, Michael Porowski, and Albert Schweizer; and

      c.      Mail the Settlement payments to eligible Class Members.

      48.      The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

      49.      Upon the Effective Date, this litigation shall be dismissed with prejudice, and all Rule 23 Class Members who have not excluded themselves from the settlement and all Non-Rule 23 Class Members who have opted in to the lawsuit shall be permanently enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the settlement.

      It is so ORDERED this ___ day of _____, 2014.

      _____
      Honorable Paul A. Crotty
      United States District Judge