**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Deirdre Aaron
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

Jennifer L. Liu
One Embarcadero Center, 38th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile: (646) 509-2092

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
1515 South Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888
Facsimile: (561) 447-8831

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANA ABOUD, WILLIAM HICKS, MICHAEL POROWSKI, and ALBERT SCHWEIZER, individually and on behalf all others similarly situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>CHARLES SCHWAB & CO., INC.,<br><br>          Defendant. | **No. 14 Civ. 2712 (PAC)** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE
CLASS ACTION SETTLEMENT, AND APPROVAL OF THE FLSA SETTLEMENT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

I.      FACTUAL AND PROCEDURAL BACKGROUND ............................................. 2

        A.      Factual Allegations ................................................................. 2

        B.      Overview of Investigation ...................................................... 2

        C.      Settlement Negotiations .......................................................... 3

        D.      Litigation ................................................................................. 4

        E.      CAFA Notice ........................................................................... 4

II.     SUMMARY OF THE SETTLEMENT TERMS ................................................. 4

        A.      The Settlement Fund ............................................................... 4

        B.      Eligible Employees ................................................................. 5

        C.      Releases ................................................................................... 5

        D.      Allocation Formula ................................................................. 5

        E.      Attorneys' Fees, Litigation Costs, and Service Awards ......... 6

        F.      Settlement Claims Administrator ............................................ 6

ARGUMENT ...................................................................................................................... 7

I.      The Settlement Class Meets the Legal Standard for Class Certification ............ 7

        A.      The Settlement Class Meets the Legal Standard for Class Certification .............. 7

        B.      Commonality ........................................................................... 8

        C.      Typicality ................................................................................ 9

        D.      Adequacy of the Named Plaintiffs ........................................ 10

        E.      Certification Is Proper Under Rule 23(b)(3) ........................ 11

                1.      Common Questions Predominate ............................... 11

                2.      A Class Action Is a Superior Mechanism ................. 12

II.    The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved
       in All Respects ................................................................................................. 13

       A.    The Proposed Settlement Is Procedurally Fair.................................................... 15

       B.    The Proposed Settlement Is Substantively Fair .................................................. 15

             1.    Litigation Through Trial Would be Complex, Costly, and Long
                   (*Grinnell* Factor 1) ................................................................................. 16

             2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ........... 17

             3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve
                   the Case Responsibly (*Grinnell* Factor 3)................................................. 18

             4.    Plaintiffs Would Face Real Risks if the Case Proceeded
                   (*Grinnell* Factors 4 and 5)........................................................................ 18

             5.    Maintaining the Class Through Trial Would Not Be Simple (*Grinnell*
                   Factor 6)................................................................................................. 20

             6.    Schwab's Ability to Withstand a Greater Judgment Is Not Determative
                   (*Grinnell* Factor 7) ................................................................................. 21

             7.    The Settlement Fund Is Substantial, Even in Light of the Best Possible
                   Recovery and the Attendant Risks of Litigation
                   (*Grinnell* Factor 8 and 9) ........................................................................ 21

I.     Approval of the FLSA Settlement Is Appropriate Under Federal Law ............................ 23

       CONCLUSION ................................................................................................................ 24

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).............................................................................................11, 12

*Ansoumana v. Gristede's Operating Corp.*,
    201 F.R.D. 81 (S.D.N.Y. 2001) ...................................................................................24

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) .................................................................................15

*Blackmon v. Brookshire Grocery Co.*,
    835 F.2d 1135 (5th Cir. 1988) .....................................................................................23

*Cagan v. Anchor Sav. Bank FSB*,
    No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)....................................22

*Castagna v. Madison Square Garden, L.P.*,
    No. 09 Civ. 10211, 2011 WL 2208614 (S.D.N.Y. Jun. 7, 2011).................................15

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)...........................................................................14, 15, 22

*Clark v. Ecolab Inc.*,
    Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC), 2010
    WL 1948198 (S.D.N.Y. May 11, 2010) .............................................................6, 9, 12

*Clem v. Keybank, N.A.*,
    No. 13 Civ. 789, 2014 WL 2895918 (S.D.N.Y. June 20, 2014)..................................12

*Clements v. Serco, Inc.*,
    530 F.3d 1224 (10th Cir. 2008) ...................................................................................23

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)..............................................................................................8

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007)...........................................................................................11

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001).....................................................................................13, 16

*Damassia v. Duane Reade, Inc.*,
    250 F.R.D. 152 (S.D.N.Y. 2008) .................................................................................13

*Denney v. Deutsche Bank AG,*
　　443 F.3d 253 (2d Cir. 2006)................................................................7

*Desmond v. PNGI Charles Town Gaming, LLC,*
　　630 F.3d 351 (4th Cir. 2011) ............................................................23

*Diaz v. E. Locating Serv. Inc.,*
　　No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ....................15, 19

*Dziennik v. Sealift, Inc.,*
　　No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007).........................11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.,*
　　No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................14

*Frank v. Eastman Kodak Co.,*
　　228 F.R.D. 174 (W.D.N.Y. 2005).............................................*passim*

*Gen. Tel. Co. of Sw. v. Falcon,*
　　457 U.S. 147 (1982)..........................................................8

*Green v. Wolf Corp.,*
　　406 F.2d 291 (2d Cir. 1968).................................................12

*Goldberger v. Integrated Res., Inc.,*
　　209 F.3d 43 (2d Cir. 2000)...............................................15, 16

*Henry v. Quicken Loans, Inc.,*
　　698 F.3d 897 (6th Cir. 2012) ...............................................20

*Hernandez v. Merrill Lynch & Co.,*
　　No. 11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ........................10

*In re Interpublic Sec. Litig.,*
　　No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ........................15

*Johnson v. Brennan,*
　　No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ....................13, 19

*Kamean v. Local 363, Int'l Bhd. of Teamsters,*
　　109 F.R.D. 391 (S.D.N.Y. 1986) ............................................9

*Khait v. Whirlpool Corp.,*
　　No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010).........................17

*Lynn's Food Stores, Inc. v. United States,*
　　679 F.2d 1350 (11th Cir. 1982) ............................................24

*Maley v. Del Global Techs. Corp.*,
　　186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................17

*Marisol A. v. Giuliani*,
　　126 F.3d 372 (2d Cir. 1997) ...............................................................................9

*Marlo v. United Parcel Serv., Inc.*,
　　639 F.3d 942 (9th Cir. 2011) .............................................................................21

*Matheson v. T-Bone Rest., LLC*,
　　No. 09 Civ. 4214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ..........................19

*McBean v. City of New York*,
　　228 F.R.D. 487 (S.D.N.Y. 2005) ........................................................................12

*McMahon v. Olivier Cheng Catering & Events*,
　　LLC, No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ...........10, 11

*Morris v. Affinity Health Plan, Inc.*,
　　859 F. Supp. 2d 611 (S.D.N.Y. 2012) .............................................................11, 13

*Miles v. Merrill Lynch & Co. (In re IPO Sec. Litig.)*,
　　471 F.3d 24 (2d Cir. 2006) .................................................................................12

*Myers v. Hertz Corp.*,
　　624 F.3d 537 (2d Cir. 2010) ..............................................................................21

*Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of S.F.*,
　　688 F.2d 615 (9th Cir. 1982) .............................................................................22

*In re PaineWebber Ltd. P'ships Litig.*,
　　171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................19

*Perkins v. S. New England Tel., Co.*,
　　No. 07 Civ. 967, 2011 WL 4460248 (D. Conn. Sept. 27, 2011) ...........................23

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
　　237 F.R.D. 26 (E.D.N.Y. 2006) ...........................................................................8

*Reyes v. Altamarea Grp., LLC*,
　　No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ..........13, 14, 15, 24

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,
　　No. 94 Civ. 5587, 2003 WL 21136726 (S.D.N.Y. May 15, 2003) ........................17

*Robidoux v. Celani*,
　　987 F.2d 931 (2d Cir. 1993) ..............................................................................10

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986)................................................................11

*Sewell v. Bovis Lend Lease, Inc.*,
   No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012).............................9

*Spann v. AOL Time Warner, Inc.*,
   No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005).............................14

*In re Top Tankers, Inc. Sec. Litig.*,
   No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) .........................14

*Toure v. Amerigroup Corp.*,
   No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012)............................14

*Toure v. Cent. Parking Sys. of N.Y.*,
   No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007).........................10

*Urnikis–Negro v. Am. Family Prop. Servs.*,
   616 F.3d 665 (7th Cir. 2010) ............................................................23

*Valerio v. Putnam Assocs. Inc.*,
   173 F.3d 35 (1st Cir. 1999)..............................................................23

*Velez v. Majik Cleaning Serv., Inc.*,
   No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)..........................19

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)..........................................................12, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005).......................................................13, 14, 15

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)..............................................................18

*Willix v. Healthfirst, Inc.*,
   No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)...........................17

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008).....................................................17

*Yuzary v. HSBC Bank USA, N.A.*,
   No. 12 Civ. 3693, 2013 WL 5492998 ............................................... *passim*

*Zivali v. AT&T Mobility, LLC*,
   784 F. Supp. 2d 456 (S.D.N.Y. 2011).....................................................20

**Statutes**

28 U.S.C. § 1715(d) ................................................................................................4

29 U.S.C. § 216(b) ...............................................................................................20

29 U.S.C. § 255 ....................................................................................................20

**Other Authorities**

Fed. R. Civ. P. 23 ..............................................................................................8, 10

## INTRODUCTION

Plaintiffs submit this Memorandum of Law in support of their Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiffs' Motion for Final Approval").  The parties' settlement of up to $3,800,000 in this wage and hour class and collective action satisfies all of the criteria for final approval.  Plaintiffs seek an order: (1) certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Joint Stipulation of Settlement and Release ("Settlement Agreement") attached as Exhibit A to the Declaration of Justin M. Swartz in Support of Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of Class Action Settlement, and Approval of the FLSA Settlement ("Swartz Decl.");[1] and (3) approving the FLSA Settlement.

On June 30, 2014, the Court took the first step in the settlement approval process by granting preliminary approval, directing that notice be mailed to Class Members,[2] and setting the date for the final fairness hearing.  Swartz Decl. ¶ 15; ECF No. 33.  Class Members have been notified of the terms of the settlement, the monetary relief, the allocation formula, and their right to opt out of or object to the settlement.  No Class Member has objected to the settlement, no Rule 23 Class Member has opted out, and a high proportion of Class Members (84.70%) have decided to participate in the settlement.  Ex. E (Declaration of Abel Morales ("Morales Decl.")) ¶¶ 12, 15, 17; Ex. F (Rule 23 Notice of Pendency); Ex. G (Non-Rule 23 Notice of Pendency).  With such overwhelming support, and for the reasons stated below, the Court should grant final approval.

---

[1]     Unless otherwise indicated, all exhibits are attached to the Swartz Declaration.

[2]     Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

A.      **Factual Allegations**

Plaintiffs and Class Members are current and former employees of Schwab who have

worked in the position of Associate Financial Consultant ("AFC") or International CDT

Financial Consultant ("Intl CDT-FC") in California from November 7, 2009 to February 15,

2014; the position of AFC or Intl CDT-FC in any state or territory other than California from

November 7, 2010 to February 15, 2014; the position of CDT-FC/BET-FC ("CDT-FC") from

November 7, 2010 to February 15, 2014; and/or the position of AT Sales Specialist or Sr. AT

Sales Specialist ("ATS") from November 7, 2010 to February 28, 2011 (collectively, the

"Covered Positions").  Plaintiffs alleged that Schwab violated the Fair Labor Standards Act

("FLSA"), California law, and various other state wage and hour laws by improperly classifying

them and other employees in the Covered Positions as exempt from federal and state overtime

laws and failing to pay them overtime wages.  Swartz Decl. ¶ 14.  Neither this motion nor the

Settlement Agreement or any other document or information relating to the settlement of this

case is to be construed to be or admissible as evidence that Schwab engaged in any wrongdoing

or that any group of employees exists to maintain a collective action under that FLSA or a class

action under Rule 23 of the Federal Rules of Civil Procedure or comparable state law.

B.      **Overview of Investigation**

Before the initiation of this action, Class Counsel conducted a thorough investigation into

the merits of the potential claims and defenses.  Swartz Decl. ¶ 5.  Plaintiffs focused their

investigation and legal research on the underlying merits of Class Members' claims, the damages

to which they were entitled, and the propriety of class certification.  *Id*.  Class Counsel conducted

in-depth interviews with the four Plaintiffs and approximately two dozen other former Schwab

employees to determine the hours that they worked, the wages they were paid, the nature of their duties and responsibilities, and other information relevant to Plaintiffs' claims.  *Id.* ¶ 6.  Class Counsel also obtained and reviewed numerous documents from Plaintiffs related to their employment with Schwab.  *Id.*  Plaintiffs conducted in-depth background research on Schwab, including reviewing SEC filings, job postings, and other public documents, to obtain information on Schwab's corporate structure, locations, and compensation policies.  *Id.* ¶ 7.

### C.    Settlement Negotiations

On December 18, 2012, Plaintiffs sent Schwab a letter in which they summarized their potential claims and invited Schwab to engage in pre-litigation settlement discussions.  Swartz Decl. ¶ 8.  In response to the letter, the parties agreed to engage in pre-litigation discussions in order to determine whether to pursue settlement discussions.  Over the next several months, the parties exchanged extensive correspondence and engaged in several telephone conferences, in which the parties vigorously debated the strengths and weakness of the claims and defenses.  *Id.* ¶ 9.  Prior to the parties' mediation, Defendant produced various documents, including job descriptions for the Covered Positions; copies of Schwab's corporate policies regarding hours of work, overtime, and time-keeping; data reflecting the current hours of operation of all the relevant Schwab branches and call centers; and data listing all potential class members in the Covered Positions by unique identifier, job titles, salaries, incentive pay, dates of employment, and locations of employment.  *Id*. ¶ 10.

On September 10, 2013, the parties attended a mediation session in San Francisco with David Rotman, Esq., a well-known and experienced mediator in wage and hour law.  After mediating for over fifteen hours, the parties reached agreement on the settlement amount and several other key terms.  Swartz Decl. ¶ 20.  During the next several months, the parties

negotiated the remaining terms of the settlement, which were memorialized in a Settlement

Agreement.  *Id.* ¶ 12.  At all times during the settlement negotiation process, negotiations were

conducted on an arm's-length basis.  *Id.* ¶ 13.

### D.    Litigation

As contemplated in the Settlement Agreement, on April 16, 2014, Plaintiffs filed a Class

Action Complaint against Defendant in this District on behalf of themselves and others similarly

situated alleging that Defendant violated the FLSA, California law, and various other state wage

and hour laws by improperly classifying them and employees in the Covered Positions as exempt

from overtime requirements, and failing to pay them overtime wages.  Swartz Decl. ¶ 14.

### E.    CAFA Notice

The Claims Administrator sent notices to federal and state authorities required by the

Class Action Fairness Act ("CAFA") on May 16, 2014.  *See* 28 U.S.C. § 1715(d); Morales Decl.

¶ 3.  The 90-day CAFA notice period concluded on August 14, 2014.  Swartz Decl. ¶ 35.

## II.    SUMMARY OF THE SETTLEMENT TERMS

### A.    The Settlement Fund

The Settlement Agreement establishes a gross settlement amount of up to Three Million

Eight Hundred Thousand and No/100ths Dollars ($3,800,000.00) to settle claims against the

Defendant (the "Fund").   Swartz Decl. ¶ 36; Ex. A (Settlement Agreement) §§ 22, 28.  The Fund

covers Class Members' awards, service awards, attorneys' fees and costs, settlement

administrator's fees and costs, and civil penalties paid to the California Workforce Development

Agency.  Swartz Decl. ¶ 36; Ex. A (Settlement Agreement) § 28(a).  Within five days business

days following the Settlement Effective Date, the Claims Administrator shall mail settlement

payments to eligible Class Members.  Ex. A (Settlement Agreement) § 31(h).

B.      **Eligible Employees**

Class Members who are entitled to receive payments from the Fund include two groups of persons employed by Schwab in the Covered Positions (together, "Class Members"):

1.      "Rule 23 Class Members" means all persons who worked for Schwab in the position of AFC or Intl CDT-FC in California from November 7, 2009 to February 15, 2014; and

2.      "Non-Rule 23 Class Members" means all persons who work or worked for Schwab in the Covered Positions in the United States and certain United States territories who are not Rule 23 Class Members.  This includes all persons who worked for Schwab in the position of AFC or Intl CDT-FC in any state or territory other than California from November 7, 2010 to February 15, 2014; the position of CDT-FC from November 7, 2010 to February 15, 2014; and/or the position of ATS from November 7, 2010 to February 28, 2011.

Ex. A (Settlement Agreement) §§ 13, 15, 19.

C.      **Releases**

The Settlement Agreement provides that all Rule 23 Class Members who do not opt out of the settlement, and all Non-Rule 23 Class Members who submit valid and timely Consent to Join Settlement and Claim Forms, will release their state and non-FLSA federal law claims through the date on which the Court's final approval is no longer appealable.  *Id.* § 47.  All Class Members who submit valid and timely Consent to Join Settlement and Claim forms will release their FLSA claims through the date on which the Court's final approval is no longer appealable. *Id.* § 48.  Plaintiffs will release Schwab from any and all claims arising during the period from the beginning of their respective dates of Schwab employment, to the date on which the Court's final approval of the Settlement no longer is appealable.  *Id.* § 49.

D.      **Allocation Formula**

Class Members will be paid pursuant to an allocation formula based on the number of compensable weeks for which they were employed during the relevant limitations periods, whether they worked in California, and in which Covered Position(s) they were employed by

Schwab.  Ex. A (Settlement Agreement) § 31.  Courts have approved similar allocation formulas

in other wage and hour class action settlements that included nationwide FLSA claims and

multiple state law class claims.[3]  The formula reflects differences in the remedies available under

California law, the more favorable requirement under California law that exempt employees

perform exempt duties more than 50% of their working time, the average level of total

compensation and hours worked of employees in the relevant job title, and the relative likelihood

of success on the claims of employees in the relevant job title.  Swartz Decl. ¶¶ 42.  Unclaimed

funds will remain the property of Defendant.  Ex. A (Settlement Agreement) § 28.

The net settlement fund (the fund less attorneys' fees and costs, service awards, claims

administration fees, and a payment to the California Workforce Development Agency) divided

by the number of Class Members yields an amount of approximately $4,742.89.  Swartz Decl. ¶

41; Ex. E (Morales Decl.) ¶ 20.

### E.    Attorneys' Fees, Litigation Costs, and Service Awards

Class Counsel have filed a Motion for Attorneys' Fees and Reimbursement of Expenses

and a Motion for Approval of Service Awards simultaneously with this Motion.

### F.    Settlement Claims Administrator

The parties jointly selected CPT Group to serve as the Settlement Claims Administrator

("Claims Administrator").  Swartz Decl. ¶ 43; Ex. A (Settlement Agreement) § 3.  On August 1,

2014, the Claims Administrator mailed the Court-approved Notices to approximately 536 Class

Members whose names and addresses were provided by Schwab.  Ex. E (Morales Decl.) ¶¶ 6, 8.

After the Notices were mailed, the Claims Administrator received 39 Notices returned as

---

[3]    *See, e.g., Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998; *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC), 2010 WL 1948198 (S.D.N.Y. May 11, 2010).

undeliverable by the Post Office.  *Id.* ¶ 9.  No new addresses were found for 10 Class Members.

*Id*. ¶ 10.  Notices were re-mailed to Class Members for whom new addresses were located.  *Id.*

The Rule 23 Notice of Pendency advised Rule 23 Class Members, among other things, that they

could object to or exclude themselves from the Settlement.  Ex. F (Rule 23 Notice of Pendency).

On August 14, 2014, Class Counsel notified the Court that the Claims Administrator had

inadvertently allocated too many workweeks to a small number of individuals employed in the

ATS position and that, as a result, the notices for some ATSs erroneously listed higher estimated

awards then they were actually entitled to receive while the notices for the remainder of Class

Members reflected slightly lower awards.  Swartz Decl. ¶ 45; ECF No. 35.  With the Court's

permission, the Claims Administrator sent a corrective letter to Class Members informing them

of the error and providing them with a corrected estimate of their awards.  Swartz Decl. ¶ 46;

ECF No. 36.

## **ARGUMENT**

### I.      **The Settlement Class Meets the Legal Standard for Class Certification.**

When faced with a proposed class action settlement, courts first examine whether the

settlement class can be certified.  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir.

2006).  On June 30, 2014, the Court preliminarily certified the settlement classes.  The Court

should now grant final certification because the settlement meets all of the requirements of

Federal Rule of Civil Procedure 23 ("Rule 23").  Plaintiffs respectfully request that the Court

certify the Rule 23 Class solely for purposes of effectuating the settlement.

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are

met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that: "(1) the class is so

numerous that joinder of all members is impracticable; (2) there are questions of law or fact

common to the class; (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class; and (4) the representative parties will fairly and adequately

protect the interests of the class."  Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that:

> questions of law or fact common to class members predominate over any
> questions affecting only individual members, and that a class action is superior to
> other available methods for fairly and efficiently adjudicating the controversy.

*Id.* at (b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction,

and courts are to adopt a standard of flexibility" in evaluating class certification.  *Reade-Alvarez*

*v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v.*

*Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### A.     Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is

impracticable."  Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is presumed at a level of 40 members . .

. ."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Plaintiff Aboud

(the "California Plaintiffs") easily satisfies the numerosity requirement because there are

approximately 115 Rule 23 Class Members.  Swartz Decl. ¶ 44.

### B.     Commonality

The proposed classes also satisfy the commonality requirement, the purpose of which is

to test "whether the named plaintiff's claim and the class claims are so interrelated that the

interests of the class members will be fairly and adequately protected in their absence."  *Gen.*

*Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be

identical, they must share common questions of fact or law.  *Frank v. Eastman Kodak Co.*, 228

F.R.D. 174, 181 (W.D.N.Y. 2005).  There must be a "unifying thread" among the claims to

8

warrant class certification.  *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394

(S.D.N.Y. 1986).  Courts construe the commonality requirement liberally.  *Frank*, 228 F.R.D. at

181.  Even where state and federal wage and hour claimants do not share "exact experiences in

terms of uncompensated or improperly compensated hours worked, the claims are based on

similar allegations, which give rise to the same or similar legal arguments."  *Sewell v. Bovis Lend

Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at \*3 (S.D.N.Y. Apr. 16, 2012).

This case involves many common issues.  The California Plaintiff brings claims on behalf

of Rule 23 Class Members for identical claims that Defendant misclassified them as exempt

employees and failed to pay them overtime wages in violation of state wage and hour laws.

Other common issues include, but are not limited to, (a) whether Defendant maintained true and

accurate time records for all hours worked by the California Plaintiff and Rule 23 Class

Members; (b) what proof of hours worked is sufficient where an employer allegedly fails in its

duty to maintain true and accurate time records; and (c) whether Defendant acted willfully or in

reckless disregard of the statute.  *See Yuzary*, 2013 WL 5492998, at \*3 (commonality satisfied

where, among other allegations, plaintiffs claimed that "Defendants misclassified them as

exempt employees, failed to pay them overtime wages in violation of state wage and hour laws,

and failed to keep accurate records of time worked"); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04

Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at \*3 (S.D.N.Y. May 11, 2010) (same).

### C.    Typicality

Typicality is also satisfied because "each class member's claim arises from the same

course of events, and each class member makes similar legal arguments to prove the defendant's

liability."  *Marisol A.*, 126 F.3d at 376 (citation and internal quotation marks omitted).  "Like the

commonality requirement, typicality does not require the representative party's claims to be

identical to those of all class members." *Frank*, 228 F.R.D. at 182.  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class.  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

The California Plaintiff's claims arise from the same factual and legal circumstances that form the basis of the Rule 23 Class Members' claims.  Defendant classified all Plaintiffs and Class Members as exempt from overtime pursuant to the same company policy.  The California Plaintiff shared the same or similar job titles and alleged that he had the same or similar job duties as Rule 23 Class Members.  He also claims the same injuries as Rule 23 Class Members – that Defendant failed to properly pay them for overtime hours worked.  Because the California Plaintiff's claims arise from the same factual and legal circumstances that form the basis of Rule 23 Class Members' claims, the California Plaintiffs satisfies the typicality requirement.  *See Yuzary*, 2013 WL 5492998, at *3 (typicality satisfied "because Plaintiffs' claims arose from the same factual and legal circumstances that form the bases of the class members' claims") (citations omitted); *Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472, 2013 WL 1209563, at *3 (S.D.N.Y. Mar. 21, 2013) (same).

D.     **Adequacy of the Named Plaintiffs**

The California Plaintiff is an adequate class representative because he has "fairly and adequately protect[ed] the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members."  *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks and citation omitted); *see McMahon v.*

*Olivier Cheng Catering & Events,* LLC, No. 08 Civ. 8713, 2010 WL 2399328, at *2 (S.D.N.Y. Mar. 3, 2010).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted).  There is no evidence that the the California Plaintiff's interests are at odds with those of the Rule 23 Class Members.  *See Yuzary*, 2013 WL 5492998, at *3 (S.D.N.Y. Oct. 2, 2013) (adequacy met where there was no evidence that named plaintiffs' and class members' interests were at odds); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (finding adequacy requirement met where there was no evidence that plaintiffs' and class members' interests were at odds).

### E.    Certification Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality."  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### 1.    Common Questions Predominate.

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007) (internal quotation marks and citation omitted).  The

essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001) (internal quotation marks omitted), *abrogated on other grounds by Miles v. Merrill Lynch & Co. (In re IPO Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006).  Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Rule 23 Class Members' common factual allegations and common legal theory – that Defendant violated federal and state wage and hour laws by misclassifying them as exempt employees and failing to pay them for overtime hours – predominate over any factual or legal variations among class members.  *See Clem v. Keybank, N.A.*, No. 13 Civ. 789, 2014 WL 2895918, at *3 (S.D.N.Y. June 20, 2014) (finding plaintiffs' common factual allegations and common legal theory predominate over any factual or legal variations among class members in wage and hour misclassification case); *Yuzary*, 2013 WL 5492998, at *4 (same); *Clark*, 2009 WL 6615729, at *5 (same).

## 2.    A Class Action Is a Superior Mechanism.

The California Plaintiff also satisfies the superiority requirement.  Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy."  *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).[4]

---

[4]    Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not

Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Rule 23 Class Members, particularly those who lack the resources to bring their claims individually. *See Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *7 (S.D.N.Y. Sept. 16, 2011); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *3 (S.D.N.Y. Aug. 16, 2011). The California Plaintiff and the Rule 23 Class Members have limited financial resources with which to prosecute individual actions and the California Plaintiff is unaware of any pending individual lawsuits filed by Class Members arising from the same allegations for the same category of employees.

Employing the class device here will not only achieve economies of scale for class members, but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and preventing inconsistent adjudications. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161, 164 (S.D.N.Y. 2008).

## II.     The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.

Rule 23(e) requires court approval for a class action settlement to insure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine

---

inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial") (internal citation omitted); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (internal quotation marks omitted).

whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."). When, as here, "a settlement is negotiated prior to class certification, . . . it is subject to a higher degree of scrutiny in assessing its fairness." *D'Amato*, 236 F.3d at 85; *see also Spann*, 2005 WL 1330937, at *5. Even under high scrutiny, procedural and substantive considerations support approving the proposed settlement.

## A.   The Proposed Settlement Is Procedurally Fair.

The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of the California Plaintiff's claims. *See Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *2-3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs conducted a thorough investigation and enlisted the services of an experienced employment law mediator); *Reyes*, 2011 WL 4599822, at *4 (same). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato,* 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4

(S.D.N.Y. July 27, 2007); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

Here, as explained in depth *supra* in Section I.B., the settlement was reached after Plaintiffs conducted a thorough investigation and evaluated the claims and defenses, and after extensive arm's-length negotiations and information exchange between the parties.  Swartz Decl. ¶¶ 5-13.  These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process.  *See Wal-Mart Stores*, 396 F.3d at 116-17; *Reyes*, 2011 WL 4599822, at *4.

In addition, courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere.  *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474-75, 478 (S.D.N.Y. 2013) (endorsing early settlement of wage and hour class action where parties had engaged in pre-litigation settlement discussions); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when "warranted by the circumstances of the case").  The parties here acted responsibly in reaching an early pre-suit settlement.  *See Beckman*, 293 F.R.D. at 475.

### B.     The Proposed Settlement Is Substantively Fair.

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement.  495 F.2d at 448, *abrogated on other grounds by*

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors guide district courts in making this determination. They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id*. at 463. All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

### 1. Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a favorable settlement prior to dispositive motions or trial, the Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("*In re Austrian*"), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) (citation omitted). This case is no exception, with approximately 530 Class Members and claims under federal and state law. Swartz Decl. ¶ 44.

Further litigation would cause additional expense and delay. Extensive discovery would be required to establish liability and damages. In addition, the parties likely would file cross-motions for summary judgment on Schwab's exemption defense. If the Court denied the motions, a fact-intensive trial would be necessary to determine Plaintiffs' and Class Members' exemption status, assuming that any class were certified. A trial would be lengthy and complex and would consume tremendous time and resources for all parties and the Court. Any judgment

16

would likely be appealed, further extending the litigation.  The settlement, on the other hand, makes monetary relief available to Rule 23 Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of final approval.

### 2.      The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).  The lack of class member objections "may itself be taken as evidencing the fairness of a settlement."  *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94 Civ. 5587, 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003) (quoting *Ross v. A.H. Robins*, 700 F. Supp. 682, 684 (S.D.N.Y. 1988) (internal quotation marks omitted)).

Here, the Notices sent to Class Members included an explanation of the allocation formula and an estimate of each Class Member's award.  Ex. F (Rule 23 Notice of Pendency) Ex. B; Ex. G (Non-Rule 23 Notice of Pendency) Ex. B.  The Rule 23 Notice of Pendency also informed Rule 23 Class Members of their right to object to or exclude themselves from the settlement and explained how to do so.  Ex. F (Rule 23 Notice of Pendency) ¶¶ IV.B, IV.C.  No Class Members objected to or opted out of the settlement.  Ex. E (Morales Decl.) ¶¶ 12, 15.  A total of 452 Class Members have submitted timely and valid Claim Forms, yielding a participation rate of 84.70%.  *Id.* ¶ 17.  This favorable response demonstrates that the class approves of the settlement, which further supports final approval.  *See Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where seven of 2,025 class members submitted timely objections and two requested exclusion); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010) (final approval warranted where no class members objected and two opted out); *Wright v. Stern*,

553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

> **3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).**

Although preparing this case through trial would require hundreds of hours of additional discovery for both sides, the parties have already completed enough informal discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (citation omitted).  "[P]retrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement [,] [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998) (internal quotation marks omitted)).

The informal discovery here meets this standard.  Class Counsel interviewed the four Plaintiffs to determine the hours that they worked, the wages they were paid, the nature of their duties and responsibilities, and other information relevant to their claims.  Swartz Decl. ¶ 6.  Class Counsel also conducted in-depth interviews with approximately two dozen other former employees of Schwab.  *Id*.  Class Counsel conducted in-depth background research on Schwab, including reviewing SEC filings and other public documents, to obtain information on Schwab's corporate structure, locations, and compensation policies.  *Id*. ¶ 7.  Plaintiffs also obtained numerous job postings for the Covered Positions from across the country to determine the nature of the duties and responsibilities of the position.  *Id*.  To allow Plaintiffs to perform damages calculations in preparation for mediation, Defendant produced data showing the number of Class Members, job titles, salaries, dates of employment, and location of employment.  *Id*. ¶ 10.

18

Courts often grant final approval of class settlements in cases where the parties conducted the same amount or even less informal discovery than the amount accomplished in this case. *See, e.g.*, *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (granting final approval in case where discovery consisted of informal information exchange); *Johnson*, 2011 WL 4357376, at *9-10 (finding that parties were "well-equipped to evaluate the strengths and weaknesses of the case" and granting final approval where parties engaged in informal discovery and no depositions were taken); *Diaz*, 2010 WL 5507912, at *5 (granting final approval of pre-suit class settlement, where informal discovery consisted of pre-suit document exchange).  The significant amount of informal discovery conducted here allowed the parties to thoroughly assess the merits and risks of the case and to calculate damages.  Therefore, this factor favors final approval.

### 4.     Plaintiffs Would Face Real Risks if the Case Proceeded (Grinnell Factors 4 and 5).

Although the California Plaintiff believes his case is strong, it is subject to considerable risk.  "Litigation inherently involves risks."  *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  *Id.* (*quoting In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969)); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007) (the benefit of settlement is that each plaintiff "will recover a monetary award immediately, without having to risk an [unfavorable] outcome … from a trial").  In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Austrian*, 80 F. Supp. 2d at 177 (quoting *Marisol A. v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999) (internal quotation marks omitted)).

19

A trial on the merits would involve significant risks for the Plaintiffs as to both liability and damages.  Plaintiffs would have to overcome Schwab's defense that Plaintiffs and Class Members were subject to the white-collar exemptions to the FLSA, and the corresponding exemptions under applicable state laws.  While Plaintiffs believe that they could ultimately establish Schwab's liability, this would require significant factual development.  For example, after seven years of litigation and a five-week trial in a similar misclassification case involving financial services employees classified as exempt administrative employees, a jury reached a defense verdict that was upheld by both the district court and the Sixth Circuit Court of Appeals.  *See Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012).  Plaintiffs also would have had to prove willfulness in order to obtain a third year of liability and damages.  *See* 29 U.S.C. § 255.  In addition, Plaintiffs likely would have had to confront a fluctuating workweek argument, which would have posed further risk as to damages.  Class Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The proposed settlement alleviates these uncertainties.  This factor therefore weighs in favor of final approval.

### 5.   Maintaining the Class Through Trial Would Not Be Simple (Grinnell Factor 6).

The risk of obtaining collective and class certification and maintaining both through trial is also present.  Plaintiffs have not yet filed a motion to proceed on their FLSA claims on behalf of a collective pursuant to 29 U.S.C. § 216(b).  If the Court did authorize notice to the FLSA collective, Schwab would likely challenge that determination at a later date, after the close of discovery.  *See, e.g.*, *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) (granting defendant's motion to decertify collective action).

In addition, the Court has not certified the Rule 23 Class yet, and the parties anticipate that such a determination would be reached only after formal discovery and intense, exhaustive briefing.  In opposing class certification, Schwab would likely argue that the differences among various job positions and branches and other individualized questions preclude class certification.  Although Plaintiffs disagree with these arguments, defendants have prevailed on arguments like these.  *See, e.g.*, *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011) (affirming decertification, citing "variations in job duties that appear to be a product of employees working at different facilities, under different managers, and with different customer bases" (internal quotation marks and citation omitted)); *Myers v. Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010) (affirming denial of class certification in misclassification case based on evidence that class members' duties varied by location).  Risk, expense, and delay permeate such processes.  Settlement eliminates this risk, expense, and delay.  This factor favors final approval.

### 6.   Schwab's Ability to Withstand a Greater Judgment Is Not Determinative (Grinnell Factor 7).

There is no evidence here that Schwab could not withstand a greater judgment.  However, even if Schwab could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9).  Thus, this factor is neutral and does not preclude the Court from granting final approval.

### 7.   The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9).

Schwab has agreed to settle this case for up to $3.8 million.  This amount represents substantial value given the attendant risks of litigation, even though recovery could be greater if

Plaintiffs attained both collective and class certification, overcame motions to decertify any class or collective, succeeded on all claims at trial, and survived an appeal.

"The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (citing *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

Here, the settlement represents a substantial portion of the potential recovery. By Class Counsel's estimation, the $3.8 million settlement represents approximately 77.4% of the class's lost overtime wages over the liability period (four years in California, and three years in all other states) ($4,912,159), assuming that Class Members worked an average of 40 overtime weeks per year and 10 overtime hours per week,[5] if Schwab were to prevail on a fluctuating workweek

---

[5]     Class Counsel's estimate of 40 overtime weeks per year takes into account the number of weeks in which there fell a bank holiday or in which Class Members likely took paid days off, thus making it unlikely that they would have worked overtime in that week.  Swartz Decl. ¶ 38.

argument.  If Plaintiffs defeated Schwab's fluctuating workweek argument, despite the holdings

of several Circuit Courts of Appeal that have considered the issue,[6] the settlement would still

represent approximately 20.6% of the class's lost wages ($18,435,019).  The settlement

represents a substantial recovery for Class Members, particularly in light of the risks of litigation.

These risks included the risk of losing both collective and class certification, having a collective

action decertified, losing on the merits, and losing on appeal, in addition to the risk of Schwab

prevailing on a fluctuating workweek argument.  Swartz Decl. ¶ 40.

Here, each Class Member will receive a payment based upon the number of weeks for

which they were employed during the relevant limitations periods.  Class Members will each

receive an average net settlement payment (net of service awards, attorneys' fees and costs,

settlement administrator's fees and costs, and civil penalties paid to the California Workforce

Development Agency) of approximately $4,742.89.  *Id.* ¶ 41.  Weighing the benefits of the

settlement against the available evidence and the risks associated with proceeding in the

litigation, the settlement amount is reasonable.

**I.      Approval of the FLSA Settlement Is Appropriate Under Federal Law.**

Plaintiffs also request that the Court approve the settlement of their FLSA claims.  They

have brought their FLSA claims as a collective action.  Unlike the procedure under Rule 23,

---

Schwab estimated even fewer overtime weeks.  *Id.*  Class Counsel's investigation indicated that
employees in Covered Positions typically worked an average of 10-15 overtime hours per week.
*Id.* ¶ 39.

[6]      Although there is authority among district courts in this Circuit for applying time and a
half damages in a misclassification case, *see, e.g.*, *Perkins v. S. New England Tel., Co.*, No. 07
Civ. 967, 2011 WL 4460248, at *4 (D. Conn. Sept. 27, 2011), every federal appellate court that
has considered the issue has endorsed the fluctuating workweek method of calculating damages,
*see Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 357 (4th Cir. 2011); *Urnikis–
Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 681-84 (7th Cir. 2010); *Clements v. Serco, Inc.*,
530 F.3d 1224, 1230-31 (10th Cir. 2008); *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 39-40
(1st Cir. 1999); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138-39 (5th Cir. 1988).

collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001).  Because, under the FLSA, "'parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date,'" FLSA collective actions do not implicate the same due process concerns as Rule 23 actions." *Reyes*, 2011 WL 4599822, at *6 (quoting *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989)).  Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve "*bona fide* dispute[s]." *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Reyes*, 2011 WL 4599822, at *6.  If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354; *Reyes*, 2011 WL 4599822, at *6.  In this case, the settlement was the result of arm's-length negotiation involving vigorous back and forth. Swartz Decl. ¶¶ 13, 9,11-12.  During the entire process, the parties were represented by counsel experienced in wage and hour law.  Because the Settlement Agreement resolves a clear and actual dispute and was reached after vigorous arm's-length settlement negotiations, it should be approved.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) certify the settlement classes; (2) grant final approval of the class settlement; and (3) approve the FLSA settlement.

Dated: October 14, 2014
      New York, New York

Respectfully submitted,
**OUTTEN & GOLDEN LLP**

/s/ Justin M. Swartz
Justin M. Swartz

Justin M. Swartz
Deirdre Aaron
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:  (212) 977-4005

Jennifer L. Liu
One Embarcadero Center, 38th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile: (646) 509-2092

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

**Attorneys for Plaintiffs and the Class and
Putative Collective**