**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Deirdre Aaron
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

Jennifer L. Liu
One Embarcadero Center, 38th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile: (646) 509-2092

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
1515 South Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888
Facsimile: (561) 447-8831

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANA ABOUD, ALBERT SCHWEIZER, WILLIAM HICKS, and MICHAEL POROWSKI, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>   v.<br><br>CHARLES SCHWAB & CO., INC.,<br><br>                Defendant. | No. 14 Civ. 2712 (PAC) |

**DECLARATION OF JUSTIN M. SWARTZ IN SUPPORT OF PLAINTIFFS'
MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS,
FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT,
<u>AND APPROVAL OF THE FLSA SETTLEMENT</u>**

I, Justin M. Swartz, declare as follows:

1. I am a partner in the firm of Outten & Golden LLP ("O&G") in New York, New York, Plaintiff's counsel herein, and co-chair of its Class Action Practice Group. O&G is a 35+ attorney firm based in New York City that focuses on representing plaintiffs in a wide variety of employment matters, including individual and class action litigation involving wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations.

2. Along with Shavitz Law Group, P.A. ("Shavitz Law Group"), I have been one of the lawyers primarily responsible for prosecuting Plaintiffs' claims on behalf of the proposed class.

3. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**Thorough Investigation of the Class Claims**

4. This proposed settlement would resolve claims brought by Plaintiffs Dana Aboud, Albert Schweizer, William Hicks, and Michael Porowski ("Plaintiffs") on behalf of themselves and other similarly situated persons who worked in the position of Associate Financial Consultant ("AFC") or International CDT Financial Consultant ("Intl CDT-FC") in California from November 7, 2009 to February 15, 2014; the position of AFC or Intl CDT-FC in any state or territory other than California from November 7, 2010 to February 15, 2014; the position of CDT-FC/BET-FC ("CDT-FC") from November 7, 2010 to February 15, 2014; and/or the position of AT Sales Specialist or Sr. AT Sales Specialist ("ATS") from November 7, 2010 to February 28, 2011 (collectively, the "Covered Positions") employed by Charles Schwab & Co., Inc. (collectively "Schwab" or "Defendant"), alleging that Defendant violated federal and state wage and hour laws by misclassifying them as exempt employees and failing to pay overtime wages to them and other employees in the Covered Positions.

2

5. Before the initiation of this action, I, along with a team of attorneys and paralegals at O&G and our co-counsel, the Shavitz Law Group, conducted a thorough investigation into the merits of the potential claims and defenses. We focused our investigation and legal research on the underlying merits of Class Members'[1] claims, the damages to which they were entitled, and the propriety of class certification.

6. We conducted in-depth interviews with the four Plaintiffs to determine the hours that they worked, the wages they were paid, the nature of their duties and responsibilities, and other information relevant to their claims. We also conducted in-depth interviews with approximately two dozen other former employees of Schwab. We also obtained and reviewed numerous documents from Plaintiffs related to their employment with Schwab, including pay records, offer letters, compensation plans, company policies and procedures, and other related documents.

7. We conducted in-depth background research on Schwab, including reviewing SEC filings and other public documents, to obtain information on Schwab's corporate structure, locations, and compensation policies. We also obtained numerous job postings for the Covered Positions from across the country to determine the nature of the duties and responsibilities of the positions.

---

[1] "Class Members" means Plaintiffs and all persons who work or worked for Schwab in the Covered Positions in the United States and certain U.S. territories. This includes all persons who work or worked for Schwab in the position of Associate Financial Consultant ("AFC") or International CDT Financial Consultant ("Intl CDT-FC") in California from November 7, 2009 to February 15, 2014 ("Rule 23 Class Members") and all persons who work or worked for Schwab in the Covered Positions in the United States and certain United States territories who are not Rule 23 Class Members ("Non-Rule 23 Class Members").

3

**Settlement Negotiations**

8. On December 18, 2012, Plaintiffs sent Schwab a letter in which they summarized their potential claims and invited Schwab to engage in pre-litigation settlement discussions.

9. In response to the letter, the parties agreed to engage in pre-litigation discussions in order to determine whether to pursue settlement discussions. Over the next several months, the parties exchanged extensive correspondence and engaged in several telephone conferences, in which the parties vigorously debated the strengths and weakness of the claims and defenses.

10. Prior to the parties' mediation, Defendant produced various documents, including job descriptions for the Covered Positions; copies of Schwab's corporate policies regarding hours of work, overtime, and time-keeping; data reflecting the current hours of operation of all the relevant Schwab branches and call centers; and data listing all potential class members in the Covered Positions by unique identifier, job titles, salaries, incentive pay, dates of employment, and locations of employment.

11. On September 10, 2013, the parties attended a mediation session in San Francisco with David Rotman, Esq., a well-known and experienced mediator in wage and hour law. After mediating for over fifteen hours, the parties reached agreement on the settlement amount and several other key terms.

12. During the next several months, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal Joint Stipulation of Settlement and Release ("Settlement Agreement"). A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit A.**

13. At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis. Ex. A (Settlement Agreement) § 60.

**Litigation**

14. As contemplated in the Settlement Agreement, on April 16, 2014, Plaintiffs filed a Class Action Complaint against Defendant in the United States District Court for the Southern District of New York on behalf of themselves and others similarly situated alleging that Defendant violated the Fair Labor Standards Act ("FLSA"), California law, and various other state wage and hour laws by improperly classifying them and employees in the Covered Positions as exempt from federal and state overtime requirements, and failing to pay them overtime wages. Plaintiffs sought recovery of overtime wages, attorneys' fees and costs, interest, and liquidated damages.

15. On June 30, 2014, the Court took the first step in the settlement approval process by granting preliminary approval, directing that notice be mailed to Class Members,[2] and setting the date for the final fairness hearing

**Time Spent on the Litigation**

16. O&G has significant experience prosecuting wage and hour class and collective actions such as this one. O&G is or was co-lead counsel on several wage and hour cases that district courts have certified as class actions and/or collective actions including *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29. 2006), in which the Court granted summary judgment in favor of Plaintiffs and a class of more than 300 grocery store workers, *see* 628 F. Supp. 2d 447 (S.D.N.Y. Aug. 28, 2008). Others include *Clem v. Keybank, N.A.*, No. 13 Civ. 789, 2014 WL 2895918, at *9 (S.D.N.Y. June 20, 2014); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 473 (S.D.N.Y. 2013); *Hernandez v. Merrill Lynch & Co.*,

---

[2] Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement.

*Inc.*, No. 11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (certifying class and approving settlement of wage and hour class action brought under New York and federal law); *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 9380874, at *2-3 (S.D.N.Y. Sept. 21, 2011) (same); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4, 7 (S.D.N.Y. May 11, 2010) (certifying class and approving settlement of multi-state wage and hour class action); *Westerfield v. Washington Mut. Bank*, Nos. 06 Civ. 2817, 08 Civ. 287, 2009 WL 5841129, at *1-3 (E.D.N.Y. Oct. 8, 2009) (same); and *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (granting class certification and appointing O&G class counsel in multi-state wage and hour class action).  Class Counsel's experience was directly responsible for bringing about the positive settlement and weighs in favor of granting the requested fees.

17. As of October 13, 2014, O&G has spent more than 560 hours litigating and settling this litigation, including time spent by attorneys, paralegals, law clerks, and administrative assistants.  Although O&G is relatively large for a plaintiffs' side employment law firm, a small team of attorneys were utilized at any one time in order to minimize duplication of efforts and maximize billing judgment.  O&G also made every effort to have work performed by the attorney or paralegal with the lowest hourly rate who was able to perform the work effectively.  Attached as **Exhibit B** are summaries of the time spent by each attorney, paralegal, and support staff member as of October 13, 2014, and the costs incurred.

18. The hours reported are reasonable for a case of this complexity and size and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff person participating in the case.

19. Attached as **Exhibit C** are O&G's contemporaneous time records.

20. As of October 13, 2014, O&G's total lodestar on the case was $223,254.00.

21. As of October 13, 2014, Class Counsel's total lodestar on the case was $287,321.50. Class Counsel's request for one-third of the fund, or $1,266,666.67, is approximately 4.4 times their lodestar.

22. In *Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531 (S.D.N.Y.), a wage-and-hour class and collective action that resulted in settlement, O&G and the Shavitz Law Group were appointed class counsel. *See Zeltser v. Merrill Lynch & Co.*, No. 13 CI. 1531, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) (granting final approval of class and collective action settlement and approving attorneys' fees and service awards). The court in *Zeltser* approved an award of attorneys' fees that was approximately 5.1 times class counsel's lodestar.

23. As of October 13, 2014, O&G has incurred approximately $18,053.74 in out-of-pocket costs prosecuting this litigation. These costs were incidental and necessary to the prosecution of this lawsuit and court and process server fees, conference calls, document processing, postage and courier fees, transportation, working meals, photocopies, electronic research, and Plaintiffs' share of the mediator's fees. A summary of O&G's itemized costs is attached as **Exhibit D**.

24. In our experience, New York City law firms that represent plaintiffs in employment matters typically charge their clients at least one-third of their gross recoveries when they represent them on a contingency basis. In Plaintiffs' retainer agreements with Class Counsel, Plaintiffs agreed that Class Counsel could apply to the Court for one-third of a class-wide recovery and that they would pay Class Counsel one-third of any individual recovery.

25. The requested attorneys' fees are not based solely on time and effort already expended; they are also meant to compensate Class Counsel for time that they will be required to spend administering the settlement in the future. In our experience, administering class settlements of this nature and size requires a substantial and ongoing commitment. For example, since the Notices were mailed, Class Counsel and staff have responded to numerous inquiries from Class Members. Class Counsel expects to respond to more class member inquiries after final approval, especially after checks are issued. Class Counsel also expects to spend additional time working on this case, including preparing for and attending the final fairness hearing, answering class member questions, answering questions from the claims administrator, and negotiating and possibly litigating disagreements with Defendants about administering the settlement and distributing the fund. *See, e.g., Nash v. CVS Caremark Corp.*, No. 09 Civ. 79, 2013 WL 684836, at *1 (D.R.I. Feb. 25, 2013) (granting in part plaintiffs' motion to order defendants to comply with class settlement agreement); *Johnson v. Brennan*, No. 10 Civ. 4712, 2012 WL 6584019, at *1-3 (S.D.N.Y. Dec. 12, 2012) (resolving dispute over whether *cy pres* designee was appropriate); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2009 WL 466148 (S.D.N.Y. Feb. 24, 2009) (granting plaintiff's motion for contempt sanctions and ordering defendants to comply with the Court's orders).

26. Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of significant risk. Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. Any lawyer undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy and resources. Due also to the contingent nature of the customary fee

arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  Class Counsel stood to gain nothing in the event the case was unsuccessful.

27. O&G ordinarily and regularly bills clients on an hourly fee basis, based upon each attorney's standard hourly rate.  Currently, O&G's rates range from $550 to $1,025 per partner's hour, $490 to $790 per counsel's hour, $250 to $475 per associate's hour, $235 per law clerk's hour, and $220 to $250 per paralegal's hour.  The firm's clients regularly accept and pay O&G's hourly rates.

28. Based upon O&G's records, in 2013, approximately 28.2% of the hours lawyers spent on client matters were billed to paying clients.  There is no shortage of hourly work at O&G.  Thus, when O&G lawyers spend time on contingency matters, they do so at significant opportunity cost for the firm.  Indeed, O&G frequently turns away hourly matters, including hourly litigation matters, in order to enable its attorneys to work on contingency matters, primarily (though not exclusively) class actions.

29. To date, Class Counsel has worked without compensation of any kind, and the fee has been wholly contingent upon the result achieved.

**Efforts of Plaintiffs**

30. Plaintiffs Dana Aboud, Albert Schweizer, William Hicks, and Michael Porowski have made important contributions to the prosecution and fair resolution of this action on behalf of Class Members.

31. Plaintiffs assisted Class Counsel's investigation and prosecution of the claims by providing detailed factual information and documents regarding their job duties and those of

9

other Class Members, the wages they were paid, the hours that they worked, and other information relevant to their claims.

32. Throughout the investigation and mediation, Plaintiffs regularly made themselves available to communicate with Class Counsel when necessary. Plaintiffs also provided declarations in advance of the parties' mediation.

**Plaintiffs' Motion for Preliminary Approval**

33. On May 7, 2014, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of Plaintiffs' Proposed Notices of Settlement ("Motion for Preliminary Approval"), in which they requested, among other relief, that the Court grant preliminary approval of the Settlement Agreement and conditionally certify the settlement class. ECF No. 8.

34. On June 30, 2014, the Court took the first step in the settlement approval process by granting preliminary approval, directing that notice be mailed to Class Members, and setting the date for the final fairness hearing.

**CAFA Notice**

35. Defendants sent notices to federal and state authorities required by the Class Action Fairness Act ("CAFA") on May 16, 2014. The 90-day CAFA notice period concluded on August 14, 2014.

**The Settlement Fund**

36. The Settlement Agreement establishes a gross settlement amount of up to $3,800,000, which covers class members' awards, service awards, attorneys' fees and costs, settlement administrator's fees and costs, and a payment to the California Workforce

Development Agency.

37. By Class Counsel's estimation, the $3.8 million settlement represents approximately 77.36% of the class's lost wages over the liability period (four years in California, and three years in all other states) ($4,912,159.00), assuming that Class Members worked an average of 40 overtime weeks per year and 10 overtime hours per week, if Schwab were to prevail on a fluctuating workweek argument.  If Plaintiffs defeated Schwab's fluctuating workweek argument, despite the holdings of several Circuit Courts of Appeal that have considered the issue,[3] the settlement would still represent approximately 20.61% of the class's lost wages ($18,435,019.00).

38. Class Counsel's estimate of 40 overtime weeks per year takes into account the number of weeks in which there fell a bank holiday or in which Class Members likely took paid days off, thus making it unlikely that they would have worked overtime in that week.

39. In interviews Class Counsel conducted, Plaintiffs and other Class Members reported working an average of 10-15 overtime hours per week.

40. Plaintiffs faced significant litigation risks in this case, including the risk of losing both collective and class certification, having a collective action decertified, losing on the merits, and losing on appeal, in addition to the risk of Schwab prevailing on a fluctuating workweek argument.

41. Class Members will each receive an average net settlement payment (net of

---

[3] Although there is authority among district courts in this Circuit for applying time and a half damages in a misclassification case, *see, e.g.*, *Perkins v. S. New Eng. Tel., Co.*, No. 07 Civ. 967, 2011 WL 4460248, at *4 (D. Conn. Sept. 27, 2011), every federal appellate court that has considered the issue has endorsed the fluctuating workweek method of calculating damages, *see Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 357 (4th Cir. 2011); *Urnikis–Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 681-84 (7th Cir. 2010); *Clements v. Serco, Inc.*, 530 F.3d 1224, 1230-31 (10th Cir. 2008); *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 39-40 (1st Cir. 1999); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138-39 (5th Cir. 1988).

attorneys' fees and costs, service awards, claims administration fees, and a payment to the California Workforce Development Agency) of approximately $4,742.89.

42. The greater number of points under the allocation formula allocated to Class Members who were employed in California reflects the value of additional claims and monetary remedies available under California law that are not available under other states' laws, as well as the more favorable requirement under California law that exempt employees perform exempt duties more than 50% of their working time.

**Claims Administration**

43. The parties jointly selected CPT, Inc., an experienced wage and hour claims administrator, to administer the settlement.  Ex. A (Settlement Agreement) § 3.

44. There are approximately 115 Rule 23 Class Members and approximately 415 Non-Rule 23 Class Members.

45. On August 14, 2014, Class Counsel notified the Court that the Claims Administrator had inadvertently allocated too many workweeks to a small number of individuals employed in the ATS position and that, as a result, the notices for some ATSs erroneously listed higher estimated awards then they were actually entitled to receive while the notices for the remainder of Class Members reflected slightly lower awards.

46. With the Court's permission, the Claims Administrator sent a corrective letter to Class Members informing them of the error and providing them with a corrected estimate of their awards

47. After the Claims Administrator issued the Notices, Class Counsel received numerous phone calls and emails from Class Members who reacted very positively to the settlement.

48. Attached as **Exhibit E** is the Declaration of Abel Morales, dated October 10, 2014, who supervised the administration of the settlement notices in this case ("Morales Declaration").

49. Attached as **Exhibit F** is a Notice of Pendency of Class Action and Opportunity to Opt-In, Proposed Settlement, and Hearing Date for Court Approval ("Rule 23 Notice of Pendency") and Consent to Join Settlement and Claim Form.

50. Attached as **Exhibit G** is a Notice of Pendency of Collective Action and Opportunity to Opt In, Proposed Settlement, and Hearing Date for Court Approval ("Non-Rule 23 Notice of Pendency") and Consent to Join Settlement and Claim Form.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 14th day of October, 2014
New York, New York.

    /s/ Justin M. Swartz
Justin M. Swartz
**Outten & Golden LLP**
3 Park Avenue, 29th Floor
New York, NY 10016
(212) 245-1000